938 F.2d 1249
 19 U.S.P.Q.2d 1761
 SOUTHERN RESEARCH INSTITUTE, Danny H. Lewis, William E.
Meyers, Plaintiffs-Appellants,
v.
GRIFFIN CORPORATION; Department of Commerce, Robert
Mosbacher, Secretary; Department of Agriculture,
Edward R. Madigan, Secretary,
Defendants-Appellees.
 No. 90-7761.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 14, 1991.
 
 William H. Needle, Lawrence K. Nodine, Needle & Rosenberg, Atlanta, Ga., for plaintiffs-appellants.
 John M. Johnson, Lightfoot, Franklin, Whiter & Lucas, Frank W. Donaldson, U.S. Atty., Herbert J. Lewis, Asst. U.S. Atty., Birmingham, Ala., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before ANDERSON and DUBINA, Circuit Judges, and Floyd R. GIBSON*, Senior Circuit Judge.
 Floyd R. GIBSON, Senior Circuit Judge:
 
 
 1
 The plaintiff-appellants appeal the district court's[1] dismissal of their suit against the government defendants-appellees. After consideration of a motion to dismiss under Fed.R.Civ.P. 12(b)(2) or for summary judgment under Rule 56 filed by the government, the court dismissed the suit for failure of the plaintiffs-appellants to exhaust the administrative remedies available to them. The court entered final judgment as to the government defendants pursuant to Fed.R.Civ.P. 54(b). We affirm.
 
 I. BACKGROUND
 
 2
 In 1978, the plaintiff-appellants, Southern Research Institute of Alabama and two of its employees, Danny Lewis and William Meyers (collectively SRI), received a one-year grant from the Department of Agriculture (USDA) to work on a toxicant to control fire ants. The SRI and USDA scientists worked together on the project. During the year, two compounds manufactured by the 3M Corporation were discovered to have an effect on the ants, but the chemical make-up of the toxicants was unknown to either the SRI or USDA scientists. Another year of research was conducted under a USDA grant without success in uncovering the nature of the compounds.
 
 
 3
 After the second USDA grant expired, SRI contracted with Griffin Corporation of Georgia; under the contract, Griffin agreed to fund SRI's work in return for an exclusive license under any patents that resulted from SRI's research on this project. In September 1981, Lewis and Meyers discovered part of the make-up of one of the 3M compounds. Thereafter, in October, 3M disclosed to the USDA scientists the nature of both compounds. A dispute as to who "invented" the compounds ensued, with both SRI and USDA filing patent applications on the fire ant intoxicant and each naming their own scientists as inventors.
 
 
 4
 The rights claimed by the United States were shifted from the Secretary of Agriculture[2] to the Secretary of Commerce, and the National Technical Information Service (the NTIS) assumed responsibility for licensing the patent. To that end, on May 24, 1983, the NTIS published notice in the Federal Register that the fire ant toxicant as "A Method for the Control of Insects" was available for licensing. 3M applied for a license, and the NTIS intended to grant an exclusive license to 3M and published a notice to that effect in the Federal Register on July 6, 1983. The purpose of the second notice was to give an opportunity for objections, but no one, including SRI, objected.
 
 
 5
 In August of 1983, Griffin applied for an exclusive license for the fire ant toxicant as well. 3M withdrew its application for a license in April of the following year, and the NTIS ultimately gave the exclusive license to Griffin by an agreement effective as of August 15, 1985, but without the required public notice ever having been published. SRI had actual notice, however, of the potential NTIS-Griffin license through its Administrative Services Officer, E. Larry Williams, who was in charge of patent licensing for SRI.[3] Also in 1985, SRI and the USDA had worked out the inventorship dispute by each amending their patent applications to include the other's scientists as inventors. The patent for "A Method for the Control of Insects" issued on May 1, 1990, and listed both SRI and the Secretary of Agriculture as assignees. Griffin is now the exclusive licensee of both the USDA and SRI.
 
 
 6
 SRI began this lawsuit by suing Griffin in November of 1989 for breach of contract, reformation, or voiding of its contract with Griffin. In December, SRI sent a letter to the USDA's general counsel in which it maintained that under certain patent laws SRI 1) elected to retain its patent rights in the joint invention of "A Method for the Control of Insects" and 2) requested the government to assign to SRI any rights in the invention which the government claimed. The USDA's counsel responded to SRI in January of 1990 that the patent laws which SRI purportedly invoked were not applicable to the subject invention as it had been invented prior to the applicability of those sections.
 
 
 7
 SRI's return volley brought the USDA, the Department of Commerce (USDC), and both Secretaries into its lawsuit against Griffin. By Count V of its amended complaint[4] filed in May 1990, SRI sought to have the NTIS-Griffin license voided because the USDA did not own the invention under the patent laws and because the NTIS had failed to notice its intent to license Griffin. SRI also sought mandamus to compel the government to transfer or assign its rights in the patent and invention to SRI under 35 U.S.C. Sec. 202(e). The federal defendants moved for dismissal under Fed.R.Civ.P. 12(b)(2) or alternatively for summary judgment under Rule 56.
 
 
 8
 The district court concluded that jurisdiction over the government could only lie pursuant to the Administrative Procedure Act (A.P.A.), 5 U.S.C. Secs. 701-706, and that mandamus was unavailable because of the adequate law remedy evidenced by the suit against Griffin. The district court went on to conclude that SRI had failed to exhaust its administrative remedies and that SRI failed to fall within an exception to exhaustion because the government had not exceeded its authority in licensing Griffin or in refusing to transfer or assign any rights to SRI. According to the court, the actual notice SRI had of Griffin's license was sufficient despite the lack of public notice and the government was not required to assign or transfer rights under the applicable patent laws, but rather could exercise discretion in doing so, vel non. Without an overreach of authority by the government and without exhaustion of remedies, judicial review could not be had under the A.P.A., thus the district court entered an order dismissing the federal defendants and dismissing the action against them with prejudice. The order was entered pursuant to Fed.R.Civ.P. 54(b) as a final judgment appealable to this court.
 
 II. DISCUSSION
 A.
 
 9
 SRI has complained that the government's license with Griffin (through NTIS and USDC) is void and that the government wrongly failed (through the USDA) to assign its patent rights to SRI; that is, SRI seeks judicial review of agency decisions. SRI has posited many well-stated arguments to suggest avenues by which we might undo the government's actions, but we reject them all. Rather we conclude, as did the district court, that this case arises and concludes as a case or controversy under the A.P.A., 5 U.S.C. Secs. 701-706 (1988). We must determine whether review of the government agencies' actions is appropriate in this case in light of 1) the jurisprudential doctrine of exhaustion of administrative remedies and 2) section 701 of the A.P.A., all in the context of the applicable patent laws and regulations. The relevant statute outlining agency power in this case appears as part of the patent law amendments passed in 1980, sometimes called the Bayh-Dole Act, and codified at 35 U.S.C. Secs. 200-212 (1988).[5]B.
 
 
 10
 Sections 202(a), (e), 207, and 209 are the provisions by which the government purportedly acted (or failed to act) in this case. We must determine whether review of the government's (in)action is available in federal court under the exhaustion doctrine (as to sections 207 and 209) and under the A.P.A. (as to sections 202(a) and (e)).[6]
 
 
 11
 1. Sections 207, 209, the NTIS-Griffin License, and Exhaustion
 
 
 12
 Section 207 of title 35 provides in pertinent part that "[e]ach Federal agency is authorized to-- ... (2) grant nonexclusive, exclusive, or partially exclusive licenses under federally owned patent applications ... royalty-free or for royalties or other consideration...." 35 U.S.C. Sec. 207(a) (1988). Section 209 further delineates, as its heading suggests, "[r]estrictions on licensing of federally owned inventions." 35 U.S.C. Sec. 209 (1988).
 
 
 13
 The NTIS first gave notice of its intent to grant a license for "A Method for the Control of Insects" in the Federal Register on May 24, 1983, citing its authority under 35 U.S.C. Sec. 207. 48 Fed.Reg. 23,295 (1983). Thereafter, on July 6, the NTIS noticed its intent to grant an exclusive license to the 3M Corporation. This notice suggested that the license would "comply with the terms and conditions of 35 U.S.C. 209 and 41 CFR 101-4.1" and further provided that "[t]he proposed license may be granted unless, within sixty days from the date of this Notice, NTIS receives written evidence and argument ... that the ... license would not serve the public interest." 48 Fed.Reg. 31,06 2-63 (1983). 3M later withdrew its application, and Griffin filed one of its own. Thereafter, on August 2, 1985, the NTIS-Griffin license was agreed upon with an effective date of August 15 of that year, without any notice in the Federal Register. Nevertheless, the record reveals that SRI, through an officer responsible for patents, E. Larry Williams, had actual knowledge of Griffin's interest in an NTIS license as early as 1983 and actual notice of NTIS' intent to grant the license in May 1985.
 
 
 14
 The district court concluded that the regulations at 37 C.F.R. Secs. 404.1-.14 controlled the administrative remedies available in the license aspect of this case. We do not believe, however, that this conclusion can be entirely true. The regulations at Part 404 were not added until March 12, 1985, see 50 Fed.Reg. 9802-04 (1985), and as noted in Sec. 404.1 replaced the regulations found at 41 C.F.R. Subpart 101-4.1, which were first added as temporary regulations in August 1981, see 46 Fed.Reg. 39593-96 (1981). This distinction has little practical effect in the end because the regulations are all but identical and both sets provide for an appeal for parties who object within sixty days of a published notice. Compare 37 C.F.R. Secs. 404.7(a)(1)(i) and 404.11(c) (1990) with 41 C.F.R. Secs. 101-4.104-3(a)(1)(i) and 101-4.105-4(a)(3) (1983). Of course, NTIS failed to publish any notice with respect to Griffin's license in 1985 as required by the regulations under Title 41 and later Title 37. The question then becomes whether the actual notice that SRI had sufficiently apprised SRI of its administrative remedies. We answer affirmatively.
 
 
 15
 The licensing scheme under 35 U.S.C. Secs. 207 and 209 and the applicable regulations provided an avenue of administrative appeal of which SRI failed to avail itself. SRI knew that NTIS intended to exclusively license to Griffin (SRI's own exclusive licensee under its own patent application) rights to "A Method for the Control of Insects" under the government's patent application, but SRI failed to make any objection as provided by the regulations. SRI is charged with the knowledge of the regulations covering objections to proposed licenses that appeared in the Code of Federal Regulations both under Title 41 and under Title 37. Though the government failed its notice obligations, actual notice to SRI of the proposed NTIS-Griffin license charged SRI with the responsibility to object pursuant to the regulations. Having failed to do so, SRI failed to exhaust a non-futile administrative remedy and thus may not obtain judicial review of the NTIS license to Griffin under 35 U.S.C. Secs. 207 and 209 and the applicable regulations. See, e.g., Association of Retarded Citizens of Alabama v. Teague, 830 F.2d 158, 160-61 (11th Cir.1987) (discussing merits of exhaustion requirement under the Education for All Handicapped Children Act). The district court's conclusion to the same effect was not erroneous.[7]
 
 
 16
 2. Sections 202(a), (e), and the A.P.A.
 
 
 17
 The remaining aspect of this case is the government's refusal to transfer its patent rights in "A Method for the Control of Insects" to SRI pursuant to 35 U.S.C. Sec. 202(a) and (e). Section 202(a) provides, in part, "[e]ach nonprofit organization ... may, within a reasonable time after disclosure as required by paragraph (c)(1) of this section, elect to retain title to any subject invention...." 35 U.S.C. Sec. 202(a) (1988).[8] Section 202(e) states that "[i]n any case when a Federal employee is a coinventor of any invention made under a funding agreement with a nonprofit organization ... the Federal agency employing such coinventor is authorized to transfer or assign whatever rights it may acquire in the subject invention from its employee to the contractor subject to the conditions set forth in this chapter." 35 U.S.C. Sec. 202(e) (1988).
 
 
 18
 In December 1989, SRI wrote a letter to the USDA professing to elect to retain title to "A Method for the Control of Insects" under 202(a) and requesting an assignment of rights under 202(e) from the government to SRI. The USDA responded in January 1990 that SRI's election was not valid because the funding agreement between SRI and the government had given patent rights to the government and because 202(a) did not apply. Further, the government suggested that it could not so assign any rights because it believed that 202(e) did not apply to the subject invention and because it had already granted a license under its interest to Griffin.
 
 
 19
 The district court concluded that section 202(e) granted federal agencies discretion to assign or transfer federal patent rights but did not mandate that they do so.[9] As such, the USDA's decision not to transfer was not an action in excess of statutory authority which could circumvent the exhaustion doctrine. We do not agree that the matter resolves itself exactly in that way. Rather, the question is whether the authority granted federal agencies in 202(e) is authority committed to agency discretion and thereby beyond the ken of judicial review under 5 U.S.C. Sec. 701(a)(2). We conclude that it is.
 
 
 20
 Section 701(a) of the A.P.A. reads: "[t]his chapter applies, according to the provisions thereof, except to the extent that-- ... (2) agency action is committed to agency discretion by law." In Heckler v. Chaney, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), the Supreme Court examined the meaning of this subsection in depth. The facts of Chaney involved the more typical refusal by an agency to take enforcement action in a particular situation, and the Supreme Court concluded that such refusals are presumptively non-reviewable when Congress has committed such action to agency discretion. Id. at 831-33, 105 S.Ct. at 1655-56. More important to our own concerns, the Court also indicated how to determine when statutes have so committed discretion to an agency under Sec. 701(a)(2). "[Judicial] review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the statute ('law') can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely." Id. at 830, 105 S.Ct. at 1655.
 
 
 21
 Citing similar language from Chaney, this court in Greenwood Utilities Comm'n v. Hodel, 764 F.2d 1459, 1464 (11th Cir.1985), concluded that the Department of Energy's decisions about electrical power allocation were unreviewable because the statute in question "merely establish[ed] a series of general directives to control the distribution of excess electricity ... [and did] not establish an entitlement to power." Id. We think the patent statute in this case can be similarly considered. Sections 202(a) and (e) do not establish an entitlement to patent rights. Though the indication is strong that they government should ordinarily grant such rights, the statute admits of no considerations by which we could fairly gauge the propriety of a refusal to so grant such rights.[10]
 
 
 22
 Under the Court's views in Chaney, this court's views in Greenwood, and our own reading of 202(e), we conclude that by 202(e) Congress has committed the refusal to assign or transfer patent rights to the discretion of the various federal agencies that acquire those rights in a manner putting such discretionary refusal beyond judicial review. In this case, the USDA declined to transfer its patent rights in "A Method for the Control of Insects" to SRI, and we are without the statutory guidance to meaningfully assess that inaction, and thus without authority to review it. The district court's holding on this count is affirmed for the somewhat different reasons we have discussed.
 
 III. CONCLUSION
 
 23
 Though stated differently by SRI, its cause of action against the federal government sought to review two agency actions: the creation of the NTIS-Griffin license and the refusal by the USDA to transfer or assign its patent rights. Given that, SRI had to overcome 1) its failure to exhaust administrative remedies and 2) the limits of the A.P.A. SRI did not exhaust the remedies available to it to challenge the NTIS-Griffin license under the applicable regulations and in light of its actual notice of the pendency of that license, therefore SRI may not obtain judicial review of the license. The authority to deny transfer or assignment of patent rights has been left to the discretion of the various federal agencies as a matter of law by 35 U.S.C. Sec. 202(e), hence SRI may not obtain review of the USDA's decision not to transfer or assign the federal interests in the subject invention of this case. For all the reasons we have given, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 The Honorable William M. Acker, Jr., United States District Judge for the Northern District of Alabama
 
 
 [2]
 We note that Clayton Yeutter, who was Secretary of Agriculture during the briefing of this case, has since been replaced by Edward R. Madigan
 
 
 [3]
 By correspondence to Griffin dated May 31, 1985, Williams revealed his knowledge of the proposed license between NTIS and Griffin. Similarly, in an affidavit filed with SRI's response to the government's motion for summary judgment, Williams admitted knowledge of Griffin's interest in an NTIS license as early as 1983 and knowledge of the NTIS's intent to grant the license in May 1985. Williams averred that he did not object to the proposed license because of assurances from Griffin that the NTIS-Griffin license would not interfere with SRI's own license to Griffin and that Lewis and Meyers would be added as co-inventors on the government's patent application
 
 
 [4]
 The other four counts restated SRI's complaints against Griffin. The docket sheet from the district court reflects that decisions on various pending motions in the case against Griffin are being deferred pending the resolution of this appeal
 
 
 [5]
 The particular provisions of that law were enacted by Amendments to the Patent and Trademark Laws, Pub.L. No. 96-517, Sec. 6(a), 94 Stat. 3015, 3019-27 (1980). The provisions were added as Chapter 38 to Title 35 of the United States Code and entitled "Patent Rights in Inventions Made with Federal Assistance;" however, an editorial decision was made to codify this section following Chapter 17 of Title 35 in view of the subject matter of the law and its section numbering. Thus, the law first appeared as Chapter 38, following Chapter 17 at 35 U.S.C. Secs. 200-211 (Supp. IV 1980). Congress corrected its apparent error and by Pub.L. No. 97-256, title I, Sec. 101(5), 96 Stat. 816 (1982), renamed Chapter 38 as Chapter 18. Thereafter the law appeared at 35 U.S.C. Secs. 200-211 (1982). Various amendments have since changed some of the provisions without consequence for the determinations made in this case. For our purposes we use the most recent version of the law appearing in Title 35 of the 1988 United States Code
 
 
 [6]
 35 U.S.C. Secs. 200-211 became effective on July 1, 1981. See Amendments to the Patent and Trademark Laws, Pub.L. No. 96-517, Sec. 8(f), 94 Stat. 3015, 3028 (1980). The statute covers inventions "conceived or first actually reduced to practice in the performance of work under a funding agreement...." 35 U.S.C. Sec. 201(e) (1988). The funding agreement between SRI and the USDA was entered into in 1978 and concluded in 1980. Arguably some portions of the Act could not apply to this case, such as Sec. 202(c) covering funding agreements. The extensive requirements of paragraph (c) could not have been included in the agreement between SRI and the USDA, which agreement provided either that patentable inventions were to be disposed of by mutual agreement or granted to the public. Other portions of the Act arguably should apply, such as those covering licensing and transfer or assignment of patent rights, because the government's conduct in this case occurred after the effective date of July 1, 1981
 As an academic point, we note that it is conceivable that the entire Act may not apply if the discovery of "A Method for the Control of Insects" did not occur under a funding agreement covered by the Act. See 35 U.S.C. Sec. 201(e) (1988). However, because the district court concluded that the discovery of the chemical nature of the toxicants used in "A Method for the Control of Insects" occurred in September 1981, after the effective date of the Act, and because that finding and the applicability of the Act are not challenged by this appeal, we will assume without deciding that the Act applies as discussed in this opinion for purposes of determining the review available under the A.P.A.
 
 
 [7]
 SRI has suggested that it may avoid the exhaustion requirement and obtain judicial review of the NTIS-Griffin license because the government was without authority to grant the license because the government did not possess rights in the invention. We disagree. The funding agreement between SRI and the USDA left patent rights with the government, and under 35 U.S.C. Sec. 207 the government may license under a patent application. Ultimately SRI and the USDA were both listed on the patent as co-assignees, and, as the district court pointed out, one co-owner may license freely without regard to the other. Such licenses are probably not attractive to prospective licensees, but in this case Griffin was the exclusive licensee of both patent holders anyway
 
 
 [8]
 Disclosure by SRI appears to have taken place by a letter from Williams to Ernest R. George, Research Contracts and Grants Officer for the Science and Education Administration, dated January 23, 1981. The letter suggests that the USDA scientists indicated to SRI scientists that the USDA had no interest in seeking a patent on the fire ant toxicant. The letter further requests that SRI be allowed to pursue a patent. The timing of this letter prior to the effective date of the Act raises some doubts about the applicability of Sec. 202 to this case at all. Nevertheless, for the reasons given in note 6, ante, we will not address those doubts
 
 
 [9]
 While SRI argues that the use of "authorized" in Sec. 202(e) can be understood as mandatory, we do not agree. The authorization Congress has given federal agencies to transfer or assign patent rights in Sec. 202(e) is no more mandatory than the authorization that Congress has given the same agencies to "apply for, obtain, and maintain patents" or grant licenses under such patents or applications in Sec. 207(a)(1) and (2). We note that the Federal Circuit has recently held that the Department of Commerce is accorded "[c]onsiderable weight" in its interpretation of its own authority under 35 U.S.C. Sec. 207(a)(2). Nutrition 21 v. United States, 930 F.2d 862, 866-67 (Fed.Cir.1991)
 
 
 [10]
 Commentators have suggested that the Bayh-Dole Act was intended to grant a presumption in favor of granting patent rights to inventions under funding agreements to parties like SRI. Walterscheid, The Need for a Uniform Government Patent Policy: The D.O.E. Example, 3 Harv. J.L. & Tech. 103, 129-34, (1990); see also Gabig, Federal Research Grants: Who Owns the Intellectual Property?, 9 Harv. J.L. & Pub. Pol'y 639, 645-47 (1986). While we may not disagree with this view, we note that the Act leaves us without sufficient judicial standards by which to evaluate a refusal to give away patent rights