NUTRITION 21, Plaintiff–Appellee,

v.

The UNITED STATES,
Plaintiff–Appellant,

v.

THORNE RESEARCH, INC., Albert F.
Czap, Defendants.

No. 90–1382.

United States Court of Appeals,
Federal Circuit.

March 29, 1991.

William C. Rooklidge, Knobbe, Martens, Olson & Bear, Newport Beach, Fla., ar-

gued, for plaintiff-appellee. With him on the brief, were Don W. Martens and Lowell Anderson.

Douglas Letter, Dept. of Justice, Washington, D.C., argued, for plaintiff-appellant. With him on the brief, were Stuart M. Gerson, Asst. Atty. Gen., and Vito J. DiPietro, Director.

Paul T. Meiklejohn, Seed & Berry, Seattle, Wash., for defendants.

Before NIES, Chief Judge, and RICH and MAYER, Circuit Judges.

RICH, Circuit Judge.

This interlocutory appeal comes to us under 28 U.S.C. § 1292(b), the United States District Court for the Western District of Washington, Dimmick, J., having certified to this court the existence of a potentially controlling question of law as to which there is substantial ground for difference of opinion, the answer to which may advance the ultimate determination of this ongoing patent infringement litigation. *See Nutrition 21 v. Thorne Research, Inc.,* 130 F.R.D. 671, 14 USPQ2d 1244 (W.D. Wash.1990). The certified question is whether Nutrition 21, an "exclusive" licensee under the patent in suit, title to which is in the United States (U.S.), may, under the circumstances of this case, maintain a patent infringement action without the U.S. as a party, when the U.S. has authorized Nutrition 21 to sue for patent infringement in its own name and on its own behalf. We have jurisdiction under 28 U.S.C. §§ 1292(c)(1), 1295(a)(1), and 1338(a). We answer the certified question affirmatively.

## BACKGROUND

*A. Procedural History*

The lawsuit underlying this appeal is for infringement of U.S. Patent No. 4,315,927 ('927 patent), titled "Dietary Supplementation with Essential Metal Picolinates," owned by the U.S. as represented by the Secretary of Agriculture.[1] The Department of Commerce is responsible for ad-

1. That lawsuit has also given rise to companion appeal No. 90–1283, decided concurrently here- with. 930 F.2d 867.

ministration of the '927 patent. Plaintiff Nutrition 21, a California limited partnership and a licensee of the '927 patent, alleges that Thorne Research, Inc. (Thorne), a Washington corporation, and Albert F. Czap (Czap) infringe the '927 patent by their sales of chromium picolinate.[2]

Having previously notified the U.S. of possible infringement by Thorne, Nutrition 21 invited the U.S. to join its planned infringement suit in December, 1989. When the U.S. refused, Nutrition 21 filed suit against Thorne in January, 1990, naming the U.S. as a party defendant pursuant to Fed.R.Civ.P. 19(a).[3]

The U.S. then moved to be dismissed from the case, taking the position that the suit could be maintained by Nutrition 21 without the need for the U.S. as a party. The U.S. based its argument on (1) the enforcement rights granted to Nutrition 21 by the U.S. under the license agreement, and (2) the authorization provided to federal agencies under 35 U.S.C. § 207(a)(2) to grant patent enforcement rights to licensees. Section 207(a)(2) was enacted as part of "An Act to Amend the Patent and Trademark Laws," Pub.L. No. 96–517, 94 Stat. 3015 (1980) (§ 6(a) of which is codified at 35 U.S.C. §§ 200–11). We discuss both the terms of the license agreement and 35 U.S.C. § 207(a)(2) in greater detail below.

Opposing the U.S. motion to be dismissed, Nutrition 21 moved for realignment of the U.S. as an involuntary plaintiff, again pursuant to Fed.R.Civ.P. 19(a). Nutrition 21 acknowledged that it would not otherwise object to proceeding without the U.S., but feared that if it did so it might be caught in a "Catch–22" situation, i.e., wherein after the district court had dismissed the U.S. as an unnecessary party, and a judgment had been rendered, this court might on appeal dismiss Nutrition 21's infringement action for want of an indispensable party under Fed.R.Civ.P. 19(b).[4]

---

**2.** A representative claim of the '927 patent reads:

> 1. A food composition for selectively supplementing essential metals in a mammalian diet and for facilitating absorption of said metals by the mammalian system comprising a food composition containing an effective amount of at least one exogenously synthesized essential metal picolinate complex characterized by the following structural formula:

> wherein M represents the metallic cation and n is equal to the cation's valence.

**3.** Fed.R.Civ.P. 19(a) provides:

> **Joinder of Persons Needed for Just Adjudication**
>
> (a) *Persons To Be Joined If Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

**4.** Fed.R.Civ.P. 19(b) provides:

> **Determination by Court Whenever Joinder not Feasible**
>
> If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

After oral argument, the district court issued an order denying the U.S. motion to be dismissed as a party and realigning the U.S. as an involuntary plaintiff. *Nutrition 21*, 130 F.R.D. at 671, 14 USPQ2d at 1244. The court stated, first, that the U.S. "owns the patent in question here" and, second, that the owner of a patent is a necessary party to a suit by an exclusive licensee for patent infringement, relying on *Independent Wireless Telegraph Co. v. Radio Corp. of America*, 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357 (1926). Therefore, the court found, the U.S. has "in effect consented to its necessary joinder in this action." *Nutrition 21*, 130 F.R.D. at 673, 14 USPQ2d at 1246.

The district court also considered whether it was proper to force joinder of the U.S. in light of 28 U.S.C. § 516, which reserves to the Attorney General the conduct of litigation to which the U.S. is a party.[5] The Attorney General's authority is not at issue here, the court concluded, because 35 U.S.C. § 207(a)(2) operates as an exception to 28 U.S.C. § 516.

Accordingly, the district court realigned the U.S. as an involuntary plaintiff. In addition, the court *sua sponte* certified its order for immediate appeal pursuant to 28 U.S.C. § 1292(b).

By order dated May 24, 1990, this court granted the U.S. permission to appeal from the district court's order. Thorne submitted a memorandum in support of the U.S. position, which we refused to consider in the absence of a petition for permission to appeal. However, our order recognized that Thorne would presumably be arguing in companion appeal No. 90–1283 that if the U.S. were not made an involuntary plaintiff, the suit should be dismissed. Accordingly, we will in this appeal address Thorne's position as stated in its Reply Brief filed in companion appeal No. 90–1283.

Happily, at oral argument before this court both Nutrition 21 and the U.S. adopted the position that the U.S. is not a necessary party to this action, and that Nutrition 21 can bring the action without the presence of the U.S. Thorne, however, maintains that the underlying lawsuit cannot go forward without participation by the U.S. Thorne's interest in stopping the suit is self-evident.

### B. Nutrition 21's Rights Under the License Agreement

Answering the legal issues raised by the foregoing facts requires an understanding of the license agreement between Nutrition 21 and the U.S. Paragraph 2.1 of the agreement grants Nutrition 21

> an *exclusive* license, under the Licensed Patent, to make, have made, use and sell Licensed Products which do not contain zinc picolinate as their sole metal picolinate complex....

(Emphasis added). The chromium picolinate complexes allegedly sold by Thorne come within the purview of paragraph 2.1. Paragraph 2.2 grants Nutrition 21

> a *nonexclusive* license under the Licensed Patent to make, have made, use and sell Licensed Products which contain zinc picolinate as their sole metal picolinate complex....

(Emphasis added). The license agreement provides for a reservation by the U.S. of

> an irrevocable, nonexclusive, nontransferable, royalty-free license for the practice of all inventions encompassed within the Licensed Patent....

Of great importance here, paragraph 7.2 of the license contains the following enforcement provision (emphases ours):

> During the exclusive term of this Agreement, *as provided under Paragraph 2.1 above*, LICENSEE is *empowered* pursuant to the provisions of Chapter 29 of Title 35, United States Code or other statutes

**5.** 28 U.S.C. § 516 provides:

> **Conduct of litigation reserved to Department of Justice.**
> Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General.

(a) *to bring suit in its own name, at its own expense, and on its own behalf for infringement of presumably valid claims in a Licensed Patent;*

(b) in any such suit, to enjoin infringement and to collect *for its use,* damages, profits, and awards of whatever nature recoverable for such infringement; and

(c) to settle any claim or suit for infringement of the Licensed Patent.

provided, however, *that NTIS* [6] *and appropriate U.S. Government authorities shall have a continuing right to intervene in such suit.*

## DISCUSSION

We proceed to answer the certified question in the context of the narrow fact situation presented. That is, we consider whether a combination of (1) the authority granted to federal agencies by 35 U.S.C. § 207 and (2) the rights granted under the particular license agreement involved here justify the maintenance of the underlying infringement suit without the presence of the U.S., holder of the legal title to the patent and licensor.

## I.

Section 207 of Title 35, titled "Domestic and Foreign Protection of Federally Owned Inventions," states in pertinent part:

(a) Each Federal agency is authorized to—

. . .

(2) grant nonexclusive, exclusive, or partially exclusive licenses under federally owned patent applications, patents, or other forms of protection obtained, royalty-free or for royalties or other consideration, and on such terms and conditions, *including the grant to the licensee of the right of enforcement pursuant to the provisions of chapter 29 of this title*

*as determined appropriate in the public interest;*

(3) *undertake all other suitable and necessary steps to protect and administer rights to federally owned inventions* on behalf of the Federal Government either directly or through contract. . . .

(Emphases added).

Section 207(a)(2) is somewhat ambiguous in that the phrase "right of enforcement" is undefined; the statute does not expressly address whether "right of enforcement" encompasses a right of the licensee to maintain an infringement suit *without* the federal agency licensor as a co-party. Such a definition would admittedly be contrary to the import of *Independent Wireless,* relied upon by the district court to keep the U.S. in this lawsuit. That case held that "both the owner and the exclusive [7] licensee are generally necessary parties in the [patent infringement] action in equity." 269 U.S. at 466, 46 S.Ct. at 168. However, *Independent Wireless* did not involve a government-owned patent, and the relevant law has been changed by Congress.

Where, as here, the words of a statute are not expressly defined, and do not fairly admit of a plain, non-ambiguous meaning, resort to the legislative history for clarification is justified. *See UNR Indus., Inc. v. United States,* 911 F.2d 654, 659 (Fed.Cir. 1990). In this case, however, the legislative history is of little help. The wording of 35 U.S.C. § 207(a)(2) was derived from a portion of S. 414, "The University And Small Business Patent Procedures Act" introduced by Senator Bayh in February of 1979 [hereinafter S. 414]. That portion of S. 414, namely a proposed § 208 to be added to Title 35, was inserted by amendment into the House bill (H.R. 6933) which subsequently became Pub.L. No. 96–517. *See* 126 *Cong.Rec.* 30360–66 (1980). The applicable legislative history states:

**6.** "NTIS" is a reference to National Technical Information Service, an operating unit of the Department of Commerce.

**7.** Our decision in this case does not require a determination that Nutrition 21 is an *exclusive* licensee as that phrase has been defined in the case law. 35 U.S.C. § 207(a)(2) authorizes the

grant of enforcement rights to "nonexclusive, exclusive or partially exclusive licensees. . . ." We note, however, that the applicable Department of Commerce regulations appear to limit the grant of enforcement rights to "domestic exclusive and partially exclusive licensees." *See* 37 CFR 404.7(a)(2)(iv) (1990).

Section 208 authorizes agencies to apply for patents, to grant nonexclusive, partially exclusive, or exclusive licenses, to undertake other suitable and necessary steps to protect and administer rights to federally owned inventions, *including the right to contract with private parties for the management of Government-owned inventions;* and to transfer control of inventions to other Federal agencies.

S.Rep. No. 96–480, 96th Cong., 1st Sess. 35 (1979) (emphasis added). Like the wording of 35 U.S.C. § 207(a)(2) itself, this legislative history contains no express indication of legislative intent to allow "private party" licensees to bring suit without joining the United States or its agency which owns the patent as a co-party. The applicable regulations are no more enlightening. *See* 37 CFR 404.7(a)(2)(iv) (1990). But, one must ask, how can a private party "manage" a government-owned invention without freedom to conduct enforcement litigation?

## II.

Turning to the public policy concerns underlying passage of the legislation that included 35 U.S.C. § 207(a)(2), we conclude that they support maintenance of this infringement suit without the U.S. as a party. Congress passed Pub.L. No. 96–517 in response to, inter alia, growing concerns regarding the effective private sector commercialization of inventions resulting from government-financed research. *See H.R. Rep.* No. 96–1307, Part I, 96th Cong., 2d Sess., *reprinted in* 1980 *U.S.Code Cong. & Admin.News* 6460, 6461. Section 6(a) of Pub.L. No. 96–517 amended Title 35 of the United States Code to add Chapter 38, titled "Patent Rights in Inventions Made With Federal Assistance." Section 200 of Title 35 states the policy and objective of Chapter 38:

It is the policy and objective of the Congress to use the patent system to promote the utilization of inventions arising from federally supported research or development; to encourage maximum participation of small business firms in federally supported research and devel-

opment efforts; to promote collaboration between commercial concerns and non-profit organizations, including universities; to ensure that inventions made by nonprofit organizations and small business firms are used in a manner to promote free competition and enterprise; to promote the commercialization and public availability of inventions made in the United States by United States industry and labor; to ensure that the Government obtains sufficient rights in federally supported inventions to meet the needs of the Government and protect the public against nonuse or unreasonable use of inventions; and to minimize the costs of administering policies in this area.

We believe that these objectives, particularly the last one of cost minimization—presumably to the taxpayers—would be undermined if the U.S. as patent owner were required to make its limited litigation resources available any time one of its licensees sought to sue for patent infringement. The vigorous efforts of the Department of Justice *not to be involved* in this case are eloquent evidence to that effect.

## III.

Considerable weight should be accorded to an agency's construction of a statutory scheme it is entrusted to administer. *Chevron U.S.A. Inc. v. Natural Res. Def. Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984). This is particularly true when the statute is silent or ambiguous on a specific issue, as here. *See id.* at 842–44, 104 S.Ct. at 2781–83.

Pursuant to 35 U.S.C. § 208, the Secretary of Commerce is authorized to "promulgate regulations specifying the terms and conditions upon which any federally owned invention ... may be licensed...." Moreover, the Secretary is authorized to "assist Federal agency efforts to promote the licensing and utilization of Government-owned inventions...." 35 U.S.C. § 207(b)(1). As noted above, the Commerce Department is responsible for the administration of the patent in suit. Given these facts, we defer to the Commerce

Department's interpretation of its authority under 35 U.S.C. § 207(a)(2), as expressed in its license agreement with Nutrition 21. In other words, we view the Commerce Department's empowerment of Nutrition 21, pursuant to the plain terms of paragraph 7.2 of the license agreement (quoted *supra*), to maintain this infringement action without the participation of the U.S. as a reasonable interpretation of the authority granted to federal agencies under 35 U.S.C. § 207(a)(2).

### IV.

Thorne argues that the U.S. must be considered an indispensable party under Fed.R.Civ.P. 19(b) because of the potential for prejudice to Thorne if the U.S. is not bound by the outcome of this lawsuit, either by *res judicata* or collateral estoppel. However, the question of what preclusive effect the outcome of this lawsuit may have upon the U.S. after its dismissal as a party thereto is not properly before us at this time.

We have considered the additional issues raised by the parties, but need not reach them in light of our interpretation of 35 U.S.C. § 207(a)(2) that suit may be brought by a licensee without the United States as a party. Making Fed.R.Civ.P. 19 a limitation of this statute would effectively negate the statute's purpose.

### CONCLUSION

In sum, we hold that pursuant to 35 U.S.C. § 207(a)(2) and the patent license and enforcement agreement involved here, Nutrition 21 can maintain this action against Thorne without the U.S. as a party. We reverse the district court's March 14, 1990 order insofar as it held that the U.S. is a necessary party to this action and realigned the U.S. as an involuntary plaintiff, and direct the court to grant the U.S. motion for an order dismissing the U.S. as a party. The case is remanded for further proceedings consistent herewith.

COSTS

Each party shall bear its own costs.
REVERSED and REMANDED.