**NUTRITION 21, Plaintiff–Appellee,**

v.

**The UNITED STATES of America, Plaintiff,**

v.

**THORNE RESEARCH, INC., Albert F. Czap, Defendants–Appellants.**

**No. 90–1283.**

United States Court of Appeals, Federal Circuit.

March 29, 1991.

Rehearing Denied May 20, 1991.

868

William C. Rooklidge, Knobbe, Martens, Olson & Bear, Newport Beach, Cal., argued, for plaintiff-appellee. With him on the brief, were Don W. Martens and Lowell Anderson.

Paul T. Meiklejohn, Seed & Berry, Seattle, Wash., argued, for defendants-appellants. With him on the brief, was Kenneth G. Whitaker.

Before NIES, Chief Judge, and RICH and MAYER, Circuit Judges.

NIES, Chief Judge.

The United States District Court for the Western District of Washington in *Nutrition 21 v. Thorne Research Inc.*, 14 USPQ2d 1244 (1990), granted a preliminary injunction pursuant to 35 U.S.C. § 283 (1988), enjoining the defendants and others "from selling or offering for sale chromium picolinate." *Id.* at 14 USPQ2d at 1248. The product chromium picolinate is encompassed within claim 1 of U.S. Patent No. 4,315,927 ('927) owned by the United States. The defendants seek relief from the injunction on the ground, *inter alia,* that the district court erred by failing to set forth adequate findings of fact to support the injunction. We agree. Accordingly, we *vacate* the injunction.

I

*Facts*

The '927 patent is entitled "Dietary Supplementation with Essential Metal Picolinates." Claim 1 of the '927 patent covers metal picolinates, which include chromium picolinate, the particular compound which Thorne has been preliminarily enjoined from selling. The inventor of '927, Gary W. Evans, a researcher at the U.S. Dept. of Agriculture Human Nutrition Laboratory, assigned his patent to the United States. The United States, in turn, licensed Nutrition 21 to, *inter alia,* "make, have made, use and sell" chromium picolinate. In June

1989, Nutrition 21 learned that Thorne was offering to sell chromium picolinate in direct competition with Nutrition 21. Thereafter, Nutrition 21 filed suit against Thorne for patent infringement and moved for a preliminary injunction. For further factual background, see the opinion being issued concurrently herewith in *Nutrition 21 v. United States*, 930 F.2d 862 (Fed.Cir.1991).

## II

### Jurisdiction

Thorne's argument that Nutrition 21 cannot maintain this lawsuit without participation by the United States is rejected by our decision in the companion appeal, 930 F.2d 862. Suffice it here to say, we have concluded that Nutrition 21 may sue Thorne without the United States as a party.

## III

### Standard for Obtaining Preliminary Injunction

■ As this court has previously stated:

Whether a preliminary injunction should issue turns upon four factors: 1) the probability that the movant will succeed on the merits; 2) the threat of irreparable harm to the movant should a preliminary injunction be denied; 3) the balance between this harm and the harm that granting the injunction will cause to the other parties litigant; and 4) the public interest.

*Pretty Punch Shoppettes v. Hauk*, 844 F.2d 782, 783, 6 USPQ2d 1563, 1564 (Fed. Cir.1988) (citation omitted). On appeal, the grant of a preliminary injunction is reviewed to determine whether "the district court abused its discretion, committed an error of law, or seriously misjudged the evidence [underlying its findings of fact]." *Smith Int'l, Inc. v. Hughes Tool Co.*, 718

F.2d 1573, 1579, 219 USPQ 686, 691 (Fed. Cir.), *cert. denied*, 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983).

■ A district court is specifically required to make findings of fact on which it relies to justify granting a preliminary injunction under Fed.R.Civ.P. 52(a).[1] Sufficient factual findings on the material issues are necessary to allow this court to have a basis for meaningful review. *Oakley, Inc. v. Int'l Tropic–Cal, Inc.*, 923 F.2d 167, 168–169 (Fed.Cir.1991). Otherwise this court has no basis for evaluating what facts entered into the district court's analysis or whether the district court's reasoning comports with the applicable legal standard. *Pretty Punch*, 844 F.2d at 784, 6 USPQ2d at 1565. As explained below, these required findings of fact are missing from the district court's opinion.

## IV

### Likelihood of Success on the Merits

■ In the proceedings below, Thorne raised substantive issues respecting the validity and enforceability of the '927 patent based on evidence of record. The presumption of validity of a patent is a procedural device that places the burden of going forward and the ultimate burden of persuasion at trial on one attacking the validity of a patent. *See* 35 U.S.C. § 282 (1988); *Roper Corp. v. Litton Systems, Inc.*, 757 F.2d 1266, 1270, 225 USPQ 345, 347 (Fed.Cir. 1985). However, at the preliminary injunction stage, because of the extraordinary nature of the relief, the *patentee* carries the burden of showing likelihood of success on the merits with respect to the patent's validity, enforceability, and infringement. In *Atlas Powder Co. v. Ireco Chemicals*, 773 F.2d 1230, 1233, 227 USPQ 289, 292 (Fed.Cir.1985), while rejecting a requirement that the patentee must establish validity "beyond question," the court held:

1. Rule 52(a) of the Federal Rules of Civil Procedure states, in pertinent part:

   In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action.

The burden upon the movant should be no different in a patent case than for other kinds of intellectual property, where, generally, only a "clear showing" is required.... Requiring a "final adjudication," "full trial," or proof "beyond question" would support the issuance of a permanent injunction and nothing would remain to establish the liability of the accused infringer. That is not the situation before us. We are dealing with a provisional remedy which provides equitable *preliminary* relief. Thus, where a patentee "clearly shows" that his patent is valid and infringed, a court may, after a balance of all the competing equities, preliminarily enjoin another from violating the rights secured by the patent.

(Emphasis in original); *accord, Roper,* 757 F.2d at 1271–72, 225 USPQ at 348–49; *Smith Int'l, Inc. v. Hughes Tool Co.,* 718 F.2d 1573, 1580–81, 219 USPQ 686, 692 (Fed.Cir.1983).

The entirety of the district court's analysis of the issue of the nonobviousness of the invention is the following:

Although Thorne has presented some evidence to attack the validity of the patent, it is not convincing. No affidavits of independent scientists were presented to support contentions of prior art or obviousness.

\* \* \* \* \* \*

Nutrition 21 has a license to a patent which is presumptively valid, and which Thorne has not effectively challenged at this juncture. Thus Nutrition 21 would likely prevail on the merits.

*Nutrition 21 v. Thorne Research, Inc.,* 14 USPQ2d at 1247.

The record contains explicit evidence that the inventor, Gary Evans, overcame a rejection of his claims, at least in part, on the basis of a now admittedly inaccurate affidavit which represented to the PTO that the claimed picolinates formed *complexes* which were structurally different from the *salts* formed by the nicotinates disclosed in the prior art Hochberg patent (U.S. Patent No. 2,974,043). Nutrition 21 does not dispute the inaccuracy of Evans' prior representation. Indeed, Nutrition 21 submitted to the district court an affidavit prepared by Evans purporting to distinguish nicotinates and picolinates for *other* reasons, *e.g.,* that nicotinates form a different *kind of complex* than the claimed picolinates.

In addition, the record contains relevant prior art not considered by the PTO, namely, Abstract 19, with respect to which the district court made no findings. Nutrition 21 argues that the district court's lack of findings on Abstract 19 may be attributed to Thorne's failure to provide evidence explaining the complex organic chemistry discussed in the abstract. However, the burden was on Nutrition 21 to make a persuasive showing of validity at this stage. Moreover, Nutrition 21 submitted a declaration of Evans which, according to Nutrition 21, explains "why Abstract No. 19 does not teach what Thorne claims it teaches, why the disclosure of Abstract No. 19 was merely cumulative to that of Abstract No. 2501, which was disclosed to the Patent and Trademark Office, and why the claimed invention would not have been obvious over Abstract No. 19." Whether this would be sufficient is unknown. The court made no findings and, moreover, misplaced the burden of proof. *See Atlas Powder,* 773 F.2d at 1233, 227 USPQ at 292.

## Unenforceability Due to Inequitable Conduct

■ Thorne also challenged Nutrition 21's likelihood of success on the merits on the ground that the patent should be held unenforceable by reason of the inventor's inequitable conduct during prosecution. Thorne asserts that Evans' affidavit to the PTO discussed above was knowingly false and that material prior art references were withheld with intent to mislead. There is some evidence from which it might be inferred that Evans knew at the time that the information supplied to the PTO was wrong. However, the district court failed to make *any* findings on Thorne's inequitable conduct defense. Nutrition 21 argues that the district court did not make findings because Thorne failed to present a *prima facie* case of inequitable conduct. It is not plain to us, on the basis of the

record, that Thorne's inequitable conduct defense is entirely lacking in substance. In any event, the district court could not *sub silentio* reject it.

### Irreparable Harm

■ With respect to irreparable harm, the district court stated:

A *clear* showing of validity and infringement creates a rebuttable presumption of irreparable harm. *Roper,* 757 F.2d at 1271–72 [emphasis supplied by district court]. Related to the determination of irreparable harm is any delay by the patent holder in seeking injunctive relief. It is, however, "but one factor to be considered by a district court in its analysis of irreparable harm ..." *Hybritech* [*Inc. v. Abbott Laboratories* ], 849 F.2d [1446] at 1457 [Fed.Cir.1988]. Another factor to be considered is the effectiveness of money damages to compensate a party for market loss. *Atlas Powder Co. v. Ireco Chemicals,* 773 F.2d 1230, 1233 [227 USPQ 289] (Fed.Cir. 1985).

\*    \*    \*    \*    \*    \*

As to lack of irreparable harm, the Court is unpersuaded by Thorne's argument of Nutrition 21's delay since the parties were engaged in settlement discussions.

\*    \*    \*    \*    \*    \*

As the result of a considerable amount of media attention being given to chromium picolinate, Nutrition 21's sales will likely increase. Thorne can undercut Nutrition 21's prices, however, and draw customers from Nutrition 21 since Thorne need not pay for licenses, royalties or publicity. Nutrition 21's loss of market share would be difficult if not impossible to compensate with money

damages alone. Thus Nutrition 21 faces irreparable harm.

*Nutrition 21 v. Thorne Research, Inc.,* 14 USPQ2d at 1247.

The district court's analysis of irreparable harm is seriously flawed. First, Nutrition 21 has not established facts entitling it to a presumption of irreparable harm, because the validity of the '927 patent has never been tested in litigation, and the district court made no finding that Nutrition 21 had made a "clear showing" that the '927 patent is valid. Indeed, Nutrition 21 maintained before the district court that it had no burden to show validity.[2] That is true on the merits of the issue at trial. But without a clear showing of validity and infringement,[3] a *presumption* of irreparable harm does not arise in a preliminary injunction proceeding. *Datascope Corp. v. Kontron, Inc.,* 786 F.2d 398, 400, 229 USPQ 41, 42–43 (Fed.Cir.1986); *Roper,* 757 F.2d at 1271, 225 USPQ at 349. Accordingly, the district court's finding of irreparable harm could not properly rest upon any presumption.

■ Further, neither the difficulty of calculating losses in market share, nor speculation that such losses might occur, amount to proof of special circumstances justifying the extraordinary relief of an injunction prior to trial. *See Nuclear–Chicago Corp. v. Nuclear Data, Inc.,* 465 F.2d 428, 174 USPQ 381 (7th Cir.1972). Indeed, the district court's reliance on possible market share loss would apply in every patent case where the patentee practices the invention. Moreover, Thorne is acknowledged to be a large and financially responsible company which would be answerable in damages. While this court has repeatedly upheld the right of a patentee to a

---

**2.** During argument on the motion for preliminary injunction before the district court, counsel for Nutrition 21 repeatedly advised the court that Thorne had the burden to prove invalidity by clear and convincing evidence. Counsel's statements may have misled the district court in other ways as well. Under our precedent, "the disputed facts underlying the legal conclusion must be established by clear and convincing evidence, not the ultimate legal conclusion of obviousness itself." *Newell Cos. v. Kenney Mfg.*

*Co.,* 864 F.2d 757, 767, 9 USPQ2d 1417, 1425 (Fed.Cir.1988).

Also, counsel pointed to the "failure" of Thorne to put in expert testimony on obviousness. An expert's opinion on the ultimate legal conclusion is neither required nor indeed "evidence" at all. *Avia Group Int'l, Inc. v. L.A. Gear Calif., Inc.,* 853 F.2d 1557, 1564, 7 USPQ2d 1548, 1554 (Fed.Cir.1988).

**3.** The district court failed to say anything about infringement.

preliminary injunction and sometimes spoken of the possible inadequacy of money damages, there is no *presumption* that money damages will be inadequate in connection with a motion for an injunction pendente lite. Some evidence and reasoned analysis for that inadequacy should be proffered. *See, e.g., H.H. Robertson Co. v. United Steel Deck, Inc.,* 820 F.2d 384, 390, 2 USPQ2d 1926, 1930 (Fed.Cir.1987) (patent owner emphasized "the few remaining years of patent life").

In this case, we see no more than attorney's argument inappropriately invoking decisions where, unlike here, an adequate supporting record had been made. Finally, that Nutrition 21 delayed for a substantial period of time before seeking a preliminary injunction at least suggests that the *status quo* does not irreparably damage Nutrition 21. Therefore, if there is a basis for finding irreparable harm, the court's findings fail to factually support it.

### V

#### *Conclusion*

For the foregoing reasons, we vacate the preliminary injunction.

### VI

#### *Costs*

Each party will bear its own costs.

VACATED.