Ricoh v. Nashua Corp.                    CV-94-163-M   08/22/95

UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF NEW HAMPSHIRE


Ricoh Company, Ltd. and
Ricoh Corporation,
      Plaintiffs,

      v.                                        Civil No. 94-163-M

Nashua Corporation,
      Defendant.


                            O R D E R


      Ricoh Company, Ltd. and Ricoh Corporation (collectively
"Ricoh") move for a preliminary injunction enjoining Nashua
Corporation from making, using, and/or selling certain toner
cartridges that are covered by a patent owned by Ricoh.  Nashua
objects, arguing primarily that the Ricoh patent is invalid, and
also that Ricoh should be denied the injunctive relief it now
seeks because it inexcusably waited for five years after learning
of Nashua's alleged infringement before seeking an injunction.


                      **Factual Background.**

      Ricoh develops, manufactures, and markets a wide variety of
office products, including photocopiers.  On September 16, 1986,
the United States Patent Office issued Patent No. 4,611,730 (the
"'730 patent") entitled "Toner Replenishing Device" to Ricoh.

Subsequently, on November 7, 1989, Ricoh obtained Patent No. 4,878,603 (the "'603 patent"), also entitled "Toner Replenishing Device." Ricoh claims to be the exclusive distributor of Ricoh-made toner cartridges covered by the '730 and '603 patents. The '603 patent is the subject of Ricoh's pending motion for preliminary injunction.

Nashua manufactures and sells, among other things, replacement toner cartridges for photocopiers manufactured by Ricoh and others. As discussed more fully below, it claims to have been selling the challenged toner cartridges since 1988. On April 15, 1994, Ricoh filed this action, alleging that some of the replacement toner cartridges manufactured and marketed by Nashua infringe the '730 and '603 patents. Ten months later, on February 7, 1995, Ricoh filed the pending motion for preliminary injunction, seeking to enjoin Nashua's alleged infringement of the '603 patent.

Both the '730 and '603 patents cover a bottle which supplies toner to a photocopier. The toner bottle has an opening which fits into a collar on a toner-receiving compartment on the photocopier. When the copier detects that toner is low, it

2

rotates the bottle and toner falls into the copier's toner compartment. The '730 patent claims a bottle with a spiral auger inside which, when the toner bottle is rotated, helps to discharge toner into the toner compartment. In 1987, Ricoh informed Nashua that it believed that some of Nashua's toner cartridges infringed the '730 patent. In response, although it disclaimed any infringement of Ricoh's patent, Nashua made an effort to design around the '730 patent and began manufacturing toner cartridges with smooth interior walls (i.e., without the internal spiral auger). Nashua provided Ricoh with a sample of its redesigned, smoothed-walled toner cartridge so that Ricoh might have its patent lawyers review it. Subsequently, Ricoh obtained the '603 patent, which claims a smooth-walled bottle, without the spiral auger.

Prior to initiating this action against Nashua, Ricoh filed a similar patent infringement suit against International Communications Materials, Inc. ("ICMI"). That action concluded when ICMI acknowledged that its toner cartridges (which Ricoh argues are essentially identical to Nashua's) infringed the Ricoh patents _and_ conceded that both Ricoh patents are valid and enforceable. Prior to its capitulation, ICMI filed with the

3

Patent Office requests for reexamination of the Ricoh Patents, arguing that the patents were invalid based upon several items of prior art. The PTO examiner confirmed the validity of all claims set forth in the Ricoh patents which, presumably, contributed, at least in part, to ICMI's decision to settle its litigation with Ricoh. In light of its successful litigation against ICMI (and another alleged infringer, Designgraphix), and given the findings of the patent examiner, Ricoh claims that its patents are plainly valid and not subject to attack based on prior art.[1]

Nashua responds that the '603 patent _is_ invalid in light of prior art and, even if valid, unenforceable against it under the equitable doctrines of laches and estoppel. More to the immediate point, it also claims that Ricoh is not entitled to a preliminary injunction because it has not sufficiently demonstrated the validity of the '603 patent or that it will suffer irreparable harm in the absence of such extraordinary relief.

---

[1] _Why_ ICMI settled is of course of no importance, nor is its assumed opinion as to the '603 patent's validity. Nashua continues to contest its validity and is not bound by ICMI's settlement "precedent."

## Standard of Review.

Title 35, United States Code, section 283 authorizes the issuance of preliminary injunctions in patent cases.  It provides:

> The several courts having jurisdiction of
> cases under this title may grant injunctions
> in accordance with the principles of equity
> to prevent the violation of any right secured
> by patent, on such terms as the court deems
> reasonable.

To obtain a preliminary injunction a party must demonstrate: (1) a reasonable likelihood of success on the merits; (2) it will suffer irreparable harm if the relief requested is not granted; (3) the balance of hardships tip in its favor; and (4) the interests of the public counsel in favor of (or, at a minimum, do not counsel against) granting the injunction.  New England Braiding Co. v. A.W. Chesterton Co., 970 F.2d 878, 882 (Fed. Cir. 1992); Hybritech Inc. v. Abbott Laboratories, 849 F.2d 1446, 1451 (Fed. Cir. 1988).  The Federal Circuit has, however, cautioned that "a preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted."  Intel Corp. v. ULSI System Technology, 995 F.2d 1566, 1568 (Fed. Cir. 1993), cert. denied, ___ U.S. ___, 127 L. Ed.2d 216, 114 S. Ct. 923 (1994).

5

No one factor, viewed in isolation, is necessarily dispositive.  Rather, the court must "weigh and measure each of the four factors against the other factors and against the magnitude of the relief requested."  Chrysler Motors Corp. v. Auto Body, Inc., 908 F.2d 951, 953 (Fed. Cir. 1990).  Nevertheless, "the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial."  Id. at 953 (citations omitted).

## Discussion.

Ricoh has failed to carried its burden of proof with regard to two critical elements: likelihood of success on the merits and irreparable injury.  Accordingly, the court need not address the remaining two issues.

Preliminary injunctions are normally granted when there is an urgent need for swift action to protect a patentee's rights from infringement.  American Permahedge v. Barcana, Inc., 857 F.Supp. 308, 324 (S.D.N.Y. 1994).  Here, Ricoh waited nearly five years after issuance of the '603 patent before bringing this action against Nashua, and it waited an additional 10 months

6

before it sought to enjoin Nashua's allegedly infringing conduct. While delay alone does not preclude finding irreparable injury as a matter of law, it may, as here, be sufficiently substantial to undercut a patentee's claim that continuation of the status quo pending a decision on the merits will lead to injury that is truly irreparable. Stated differently, a delay may be so significant as to preclude a finding of irreparable harm. Chrysler Motors, 908 F.2d at 953; Hybritech Inc., 849 F.2d at 1457; Wang Lab. v. Mitsubishi Elecs. Am., No. 92-4698, 1993 U.S. Dist. LEXIS 15075 at *40, 29 U.S.P.Q.2d 1481 (C.D. Cal. July 2, 1993).

Ricoh argues first that it has demonstrated the validity of the '603 patent and a pattern of continuing infringement by Nashua. Accordingly, it claims that it is entitled to a presumption of irreparable harm in the absence of an injunction. However, in light of the conflicting evidence submitted by the parties regarding the validity of the '603 patent, the court cannot determine, on the record presently before it, that Ricoh has carried its burden in demonstrating likelihood of success in establishing its validity. Accordingly, Ricoh is not entitled to a presumption of irreparable injury and the court faces a factual

situation similar to that presented in <u>Nutrition 21 v. United States</u>, 930 F.2d 867 (Fed. Cir. 1991), where the Federal Circuit held:

> [W]ithout a clear showing of validity and infringement, a <u>presumption</u> of irreparable harm does not arise in a preliminary injunction proceeding. . . ..
>
> Further, neither the difficulty of calculating losses in market share, nor speculation that such losses might occur, amount to proof of special circumstances justifying the extraordinary relief of an injunction prior to trial. Indeed, the district court's reliance on possible market share loss would apply in every patent case where the patentee practices the invention. Moreover, [defendant] is acknowledged to be a large and financially responsible company which would be answerable in damages. While this court has repeatedly upheld the right of a patentee to a preliminary injunction and sometimes spoken of the possible inadequacy of money damages, there is no <u>presumption</u> that money damages will be inadequate in connection with a motion for an injunction pendente lite. Some evidence and reasoned analysis for that inadequacy should be proffered. In this case, we see no more than attorney's argument inappropriately invoking decisions where, unlike here, an adequate supporting record had been made. Finally, that [the patentee] delayed for a substantial period of time before seeking a preliminary injunction at least suggests that the <u>status quo</u> does not irreparably damage [the patentee].

8

<u>Id</u>. at 871-72.  Because "the basis for the presumption of
irreparable harm is the patentee's right to exclude, it is
rebuttable by acts which are incompatible with that right."  <u>Wang
Labs.</u>, 1993 U.S. Dist. LEXIS 15075 at *38-39, 29 U.S.P.Q.2d 1481
(C.D. Cal. 1993).  A substantial delay in enforcing one's patent
rights (as is the case here) is plainly inconsistent with
exercising one's right to exclude.

Ricoh next argues that Nashua's continued infringement will
cause harm for which monetary relief will provide an inadequate
remedy.  Specifically, Ricoh suggests that with the defeat of
ICMI, Nashua and other so-called "me too" infringers will expand
into the vacuum created by ICMI's absence and actually increase
their infringing sales.  The court is unpersuaded that the harm,
if any, imposed upon Ricoh by Nashua's allegedly infringing sales
cannot adequately be calculated in monetary terms.  As the
Federal Circuit has cautioned:

> Past applications of the concept that <u>no</u>
> patentee could <u>ever</u> be irreparably harmed
> when an alleged infringer is capable of
> responding in damages frequently disserved
> patentees and the patent system.  That
> disservice would not be cured by a rash of
> patentee motions for preliminary injunctions
> filed without full basis in equity.
> Application of a concept that <u>every</u> patentee

9

> is <u>always</u> irreparably harmed by an alleged
> infringer's pretrial sales would equally
> disserve the patent system.  Like all
> generalities, neither concept is universally
> applicable and, knowing that the court will
> do so, patentees should consider, weigh, and
> balance all of the equitable circumstances,
> in light of the established jurisprudence,
> before moving for a preliminary injunction.

<u>Illinois Tool Works, Inc. v. Grip-Pak, Inc.</u>, 906 F.2d 679, 683 (Fed. Cir. 1990) (citation omitted).  Here, balancing all the equitable circumstances presented by the parties, the court is persuaded that if Ricoh ultimately prevails with regard to its patent infringement action, a monetary award against Nashua will likely fully and adequately compensate it for any losses or harms suffered as a result of the infringement.

**Conclusion.**

For the foregoing reasons, the court holds that Ricoh has failed to carry the substantial burden of proof associated with a request for a preliminary injunction.  Accordingly, its Motion for a Preliminary Injunction (document no. 14) is denied.

10

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

August 22, 1995

cc:   Robert R. Lucic, Esq.
      Robert T. Greig, Esq.
      Lawrence B. Friedman, Esq.
      James R. Muirhead, Esq.
      Stephen B. Judlowe, Esq.