# United States Court of Appeals for the Federal Circuit

_____

**GAYMAR INDUSTRIES, INC.,**
*Plaintiff-Appellee*

**v.**

**CINCINNATI SUB-ZERO PRODUCTS, INC.,**
*Defendant-Appellant*

_____

2014-1174

_____

Appeal from the United States District Court for the Western District of New York in No. 1:08-cv-00299-WMS-JJM, Chief Judge William Skretny.

_____

Decided: June 25, 2015

_____

JODYANN GALVIN, Hodgson Russ LLP, Buffalo, NY, argued for plaintiff-appellee. Also represented by ROBERT J. LANE, JR.

THOMAS J. BURGER, Wood, Herron & Evans, LLP, Cincinnati, OH, argued for defendant-appellant. Also represented by PAUL J. LINDEN; TIMOTHY J. GRABER, MELISSA M. MORTON, Gibson, McAskill & Crosby, LLP, Buffalo, NY.

_____

Before PROST, *Chief Judge,* BRYSON, and DYK, *Circuit Judges.*

DYK, *Circuit Judge.*

Cincinnati Sub-Zero Products, Inc. ("CSZ"), the pre-vailing party in this patent infringement case, appeals the district court's denial of attorney's fees under 35 U.S.C. § 285. In holding that this was not an "exceptional case," the district court found that plaintiff Gaymar Industries, Inc.'s ("Gaymar") litigation position was not objectively baseless. In assessing the totality of the circumstances, the district court relied on several instances of defendant CSZ's purported litigation misconduct as a basis for finding that the case was not exceptional. We affirm the district court's finding of a lack of objective baselessness. We reverse the exceptional case finding insofar as it was based on CSZ's purported misconduct, and remand.

## BACKGROUND

Gaymar is the owner by assignment of U.S. Patent No. 6,517,510 ("the '510 patent"), which is directed to a patient temperature control system, including a blanket that can conductively warm or cool the patient.[1] On April

---

[1]   Representative claim 1 of the '510 patent pro-vides:

A device for delivering a desired medium at cer-tain temperature ranges for temperature man-agement of a mammal, comprising:

an inlet source receives the desired medi-um and directs the desired medium to a temperature-control device;

18, 2008, Gaymar sued CSZ, asserting that CSZ's Blanketrol III device infringed claims 1, 2, 5, 7–12, 19, 20, 23, 25–27, 29–31, 37, 38, 41, 43–45, 47–49, and 55 of the '510 patent. On July 15, 2008, Gaymar moved for a preliminary injunction against CSZ.

> a bio-feedback device measures the mammal's actual temperature, and transmits the measurement to the temperature-control device;
>
> depending on the measurement, the temperature-control device alters the temperature of the desired medium; and
>
> an outlet source directs the desired medium to manage the temperature of the mammal;
>
> wherein the mammal is to have its temperature set to a predetermined-desired temperature which is entered into the temperature-control device;
>
> wherein when the actual temperature is above the predetermined-desired temperature, the temperature-control device alters the temperature of the desired medium to a predetermined differential from the actual temperature; and
>
> wherein when the actual temperature is below the predetermined-desired temperature, the temperature-control device alters the temperature of the desired medium to a pre-set differential from the actual temperature.

J.A. 54–55.

On July 31, 2008, CSZ filed an inter partes reexamination request with the United States Patent and Trademark Office ("PTO"), asserting that all 134 claims of the '510 patent were invalid primarily based on the combination of the '510 patent's description of the Medi-Therm II device ("MT-II") and SARNS, a manual for a surgical blood-warming device. On September 9, 2008, CSZ moved to stay the district court action in light of the pending reexamination request. On October 24, 2008, the PTO granted the reexamination request and issued a first Office Action rejecting all claims of the '510 patent as anticipated or obvious over prior art cited in CSZ's request. On September 28, 2009, the district court denied Gaymar's motion for a preliminary injunction based on a substantial issue of patent validity, and granted CSZ's motion to stay the case pending the conclusion of the reexamination. On November 23, 2009, the PTO reaffirmed its rejection of all claims of the '510 patent.

Gaymar filed a notice of appeal with respect to the PTO's cancellation decision, but ultimately determined not to pursue it. Gaymar filed an express abandonment of all claims on April 16, 2010, and the PTO concluded the reexamination on July 13, 2010, cancelling all of the claims. The district court lifted the stay on January 20, 2012, and referred the case to a magistrate judge on February 21, 2012. Although the PTO's unappealed cancellation had resolved the merits of the district court action, the question of attorney's fees remained.

CSZ moved for attorney's fees under § 285, alleging that Gaymar's litigation position was frivolous and that Gaymar had engaged in litigation misconduct. On August 8, 2013, the magistrate judge issued a report (the "first report") recommending the denial of CSZ's § 285 motion. In the first report, the magistrate judge found that "CSZ has not proven by clear and convincing evidence that . . . Gaymar's claims were objectively baseless." J.A.

17.  The magistrate judge further found that although Gaymar intentionally gave a misleading response to a discovery request relating to a prior art reference, that alone was insufficient to render the case exceptional.  J.A. 24.  Finally, the magistrate judge noted that he "would not recommend an award of attorney's fees even if the case was exceptional," J.A. 24, relying primarily on apparent litigation misconduct by CSZ based on four examples of purported "misrepresentations to the court" or "shifting legal theories," J.A. 26.  The district court adopted in full the magistrate judge's recommendations on November 21, 2013, and denied the motion for attorney's fees.

Following the Supreme Court's April 29, 2014, decision in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), CSZ moved for reconsideration of its attorney's fees motion.  The magistrate judge issued a second report on July 3, 2014 (the "second report"), recommending the denial of CSZ's motion for reconsideration.  While the magistrate judge did not revisit his finding of a lack of objective baselessness, the magistrate judge "disagree[d]" that the primary focus under *Octane* was the objective reasonableness inquiry.  J.A. 36.  The magistrate judge denied fees relying on the litigation misconduct findings from the first report, stating that "[g]iven CSZ's own litigation misconduct, it does not have 'clean hands' sufficient to render this an 'exceptional case.'"  *Id.* (citing J.A. 25–27).  The district court again adopted the magistrate judge's recommendations in full on September 30, 2014, concluding that *Octane* did not require a different result and denying reconsideration.

CSZ appeals the denial of its attorney's fees motion.  We have jurisdiction under 28 U.S.C. § 1295(a)(1).  We review de novo whether the district court applied the correct legal standard under § 285.  *Monolithic Power Sys. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1365 (Fed. Cir.

2013).   We review the district court's factual findings underlying an exceptional case determination for clear error.  *Id.*  And we review the district court's determination of whether a case is "exceptional" for an abuse of discretion.  *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748–49 (2014).

DISCUSSION

I

Section 285 provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  The Supreme Court in *Octane* rejected the two-pronged standard articulated in *Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005), for determining whether a case is exceptional under § 285.  The Supreme Court explained that "[t]here is no precise rule or formula for making" that determination.  *Octane*, 134 S. Ct. at 1756 (internal quotation marks and citation omitted). Instead, "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."  *Id.* The inquiry into the objective reasonableness of a party's litigating position may still be relevant under *Octane* because, if a case "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated," it is "exceptional" under § 285.  *Id.*

In the first order, the court noted that CSZ's claim that Gaymar's litigation position was objectively baseless was solely based on Gaymar's apparent knowledge of prior art which disclosed "the only feature that distinguished the asserted claims of the '510 patent from the prior art."  J.A. 10 (internal quotation marks and citation omitted).  The court found that CSZ had failed to estab-

lish by clear and convincing[2] evidence that Gaymar's litigation position was objectively baseless, relying on the fact that CSZ could have but did not move for summary judgment in lieu of awaiting the outcome of the PTO reexamination, suggesting that "this case was closer than CSZ would now have this court believe." J.A. 25. The court also relied on the fact that "[i]n its reply papers, Gaymar addressed CSZ's invalidity arguments at great length and in considerable detail." J.A. 16.

While on appeal CSZ takes issue with the district court's finding that Gaymar's litigation position was not objectively baseless, it has failed to establish that the district court abused its discretion in reaching that conclusion. CSZ relies on the fact that Gaymar lost at the PTO, but as the Supreme Court made clear in *Octane*, fee awards are not to be used "as a penalty for failure to win a patent infringement suit." 134 S. Ct. at 1753 (quoting *Park-In-Theatres, Inc. v. Perkins*, 190 F.2d 137, 142 (9th Cir. 1951)). In other words, fees are not awarded solely because one party's position did not prevail. CSZ also relies on factors relevant only to the subjective inquiry,[3] such as Gaymar's pre-suit knowledge of the prior art SARNS manual and failure to withdraw its preliminary injunction motion during the pendency of the PTO reex-

---

[2] CSZ does not argue on appeal that the district court's use in the first report of the clear and convincing standard, which was reversed by *Octane* in favor of a preponderance of the evidence standard, requires a remand on this issue. *See Octane*, 134 S. Ct. at 1758.

[3] The subjective inquiry remains relevant under *Octane*. *See* 134 S. Ct. at 1757 ("[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award.").

amination. CSZ has not established that the district court erred in its determination that Gaymar's claims were not objectively baseless.

## II

Under *Octane*, a district court may consider "the substantive strength of a party's litigating position," including objective reasonableness, when determining if the case "stands out from others." *Octane*, 134 S. Ct. at 1756. Here, after *Octane*, the district court chose not to rest its decision on the reasonableness of Gaymar's litigation position—a step it might have taken—but instead refused to award fees under *Octane* based in significant part on its finding that "[g]iven CSZ's own litigation misconduct, it does not have 'clean hands' sufficient to render this an 'exceptional case.'" J.A. 36 (citing J.A. 25–27 (first report)).[4]

To be sure, the conduct of the parties is a relevant factor under *Octane*'s totality-of-the-circumstances inquiry,[5] including the conduct of the movant, but we conclude that the district court committed clear error here in finding misconduct by CSZ.

---

[4] The district court also adopted the magistrate judge's finding that he would not have awarded fees even if the case were exceptional, but that determination was also largely based on CSZ's purported litigation misconduct.

[5] *See Octane*, 134 S. Ct. at 1756; *see also, e.g.*, *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1415 (Fed. Cir. 2004) (district court did not abuse its discretion in denying fees under § 285 "because *all* of the parties had conducted themselves without the decorum required when practicing before a federal court").

The first example cited by the magistrate judge related to a July 21, 2008, initial status conference hearing (the "July 2008 hearing") before Judge Skretny:

[CSZ's] telling Judge Skretny on July 21, 2008 that [CSZ] needed to identify an expert in the technology, then later asserting that it had maintained "from the outset" that no technological expert was needed[.]

J.A. 26 (citing J.A. 942 and quoting J.A. 6489) (internal citations omitted). The first statement is from the July 21, 2008 hearing, where CSZ noted that Gaymar had "identified three experts" and that "[w]e need to identify our own expert in the technology. And we also would like to have an expert witness on patent practice." J.A. 942. The second, and supposedly inconsistent, statement arose four years later in the context of Gaymar's November 20, 2012, motion to strike the declarations in support of CSZ's § 285 motion by Richard Killworth, CSZ's expert in "the field of patent law and, specifically, [PTO] practice and procedure." J.A. 5389. Gaymar argued that Killworth was not a technical expert who could properly opine on whether the patent was obvious. CSZ argued that while Killworth was not a technical expert, he was a PTO expert who could opine on obviousness. CSZ asserted:

[T]he technology at issue in the current matter is generally understandable and does not require an expert with technical skill in the art. CSZ has maintained this position *from the outset*, where it challenged the validity of the '510 patent at the preliminary injunction phase without the aid of a technical expert.

J.A. 6489 (emphasis added).

Apparently, in finding misconduct, the district court was taxing CSZ for use of the phrase "from the outset"

with regard to the lack of a need for a technical expert, because at the July 2008 hearing—more than four years earlier—CSZ's attorney stated that "[w]e need to identify our own expert in technology." J.A. 942. But CSZ's use of "from the outset" here is clearly referring to the point at which "it challenged the validity of the '510 patent at the preliminary injunction phase without the aid of a technical expert," J.A. 6489, i.e., CSZ's opposition to Gaymar's motion for a preliminary injunction. There CSZ first laid out its invalidity defense, relying on the declaration of Killworth, who was not a technical expert. The fact that between the July 2008 hearing and the October 14, 2008, opposition CSZ decided that it did not need to rely on a technical expert does not amount to litigation misconduct, and the district court's contrary finding was clearly erroneous.

The second example cited by the magistrate judge is:

> [CSZ's] having Mr. Killworth opine on prior art from the perspective of one skilled in the art, then later denying that he did so[.]

J.A. 26 (citing J.A. 5394, 6489) (internal citations omitted). The first reference is to Killworth's October 25, 2012, supplemental declaration in support of CSZ's § 285 motion. Relying on the PTO's findings on reexamination, a prior art manual, and the testimony of Gaymar's own President (Dr. Stewart), Killworth concluded that "*it would have been obvious to a person of ordinary skill* to minimize patient discomfort by operating the MT-II [prior art] device in Manual mode to maintain the gradient." J.A. 5394 (emphasis added). The second reference is to CSZ's opposition to Gaymar's motion to strike:

> Mr. Killworth's opinions *are not based from the perspective of one of ordinary skill in the art.* Rather, his opinions are based on the perspective of the USPTO examiner conducting a hypothetical

> examination of the '510 patent in light of the references withheld by Gaymar. . . . It is . . . a perspective for which Mr. Killworth is well-qualified through his background as a patent examiner and decades of experience as a patent attorney.

J.A. 6489 (emphasis added).

In this second example, the district court was apparently taxing CSZ for stating that Killworth's "opinions are not based from the perspective of one of ordinary skill in the art," J.A. 6489, whereas in an earlier filing Killworth referred to what "would have been obvious to a person of ordinary skill," J.A. 5394. Read in context, Killworth was not opining from the perspective of one of ordinary skill in the art, but rather relying on others—the PTO examiner and Dr. Stewart—to support his opinions as a PTO expert.[6] Thus, CSZ's statements were not inconsistent, this was not litigation misconduct, and the district court's finding otherwise was clearly erroneous.

The final two examples of supposed misconduct arose against a background of a dispute between the parties as to whether Gaymar had the burden of addressing validity in its preliminary injunction (to show likelihood of success) or whether Gaymar was obligated to address the issue only after CSZ raised the issue.[7]

---

[6]    We do not suggest that the use of such an expert is appropriate. *See Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1364–65 (Fed. Cir. 2008).

[7]    Invalidity is an affirmative defense, and the patentee need not address invalidity as an initial matter in filing for a preliminary injunction. *See, e.g., Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009) ("To begin, the patent enjoys the same presumption of validity during preliminary injunction

The third example cited by the magistrate judge is:

---

proceedings as at other stages of litigation. Thus, if a patentee moves for a preliminary injunction and the alleged infringer does not challenge validity, the very existence of the patent with its concomitant presumption of validity satisfies the patentee's burden of showing a likelihood of success on the validity issue." (citations omitted)); *Abbott Labs. v. Andrx Pharms., Inc.*, 473 F.3d 1196, 1201 (Fed. Cir. 2007) ("[I]n order to defeat the [preliminary] injunction based on invalidity or unenforceability defenses . . . the party bearing the burden of proof on the issue at trial[] must establish a substantial question of invalidity or unenforceability . . . ."); *PHG Techs., LLC v. St. John Cos.*, 469 F.3d 1361, 1365 (Fed. Cir. 2006) ("In order to defeat the [preliminary] injunction on grounds of potential invalidity, [the alleged infringer], as the party bearing the burden of proof on the issue at trial, must establish a substantial question of invalidity.").

On appeal, CSZ continues to rely on *Nutrition 21 v. United States*, 930 F.2d 867 (Fed. Cir. 1991), for the contrary view, i.e., that Gaymar bore the initial burden on validity at the preliminary injunction phase. *Nutrition 21* held that "at the preliminary injunction stage, because of the extraordinary nature of the relief, the *patentee* carries the burden of showing likelihood of success on the merits with respect to the patent's validity, enforceability, and infringement." 930 F.2d at 869 (emphasis in original). But in *Nutrition 21*, the alleged infringer "raised substantive issues respecting the validity and enforceability of the [patent-in-suit] based on evidence of record," *id.*, and our holding there is fully consistent with *Titan Tire* and other cases which make clear that the alleged infringer bears the initial burden of asserting invalidity at the preliminary injunction phase. *See Titan Tire*, 566 F.3d at 1377; *Abbott*, 473 F.3d at 1201; *PHG*, 469 F.3d at 1365.

> [CSZ's] claiming that "[a]t the hearing in July, Gaymar denied that it had any obligations regarding validity," whereas in fact Gaymar correctly told Judge Skretny that its obligation to address validity would not arise until CSZ had alleged and introduced evidence of invalidity[.]

J.A. 26 (quoting J.A. 3055 and citing J.A. 947–49) (internal citations omitted). There is no inconsistency. CSZ's consistent position was that Gaymar was taking the position that it did not have any *initial burden* with respect to validity—an accurate statement of Gaymar's position. Once again, this is not a misrepresentation, and the district court's reliance on this example was clearly erroneous.

The fourth and final example is similar to the third:

> [CSZ's] claiming that "this court gave Gaymar an opportunity to address its flawed position, with a chance to update its motion for a preliminary injunction. . . . Instead, Gaymar chose to ignore its obligations regarding validity," whereas in fact Judge Skretny agreed with Gaymar's proposal to defer discussion of validity until its reply papers, after CSZ had asserted the defense of invalidity.

J.A. 26 (quoting J.A. 3056 and citing J.A. 949) (internal citations omitted). CSZ accurately stated that the district court gave Gaymar the opportunity to supplement its preliminary injunction pleadings, and CSZ's reference to Gaymar's "flawed position" expressed CSZ's own position that Gaymar's argument (which was that Gaymar should address the issue in its reply) was flawed, not the district court's view of Gaymar's position. This is clear from other portions of CSZ's filings, which the magistrate judge relied on in finding that "[t]he effect of CSZ's misrepresentations is only exacerbated by repetition." J.A. 26. For instance, the magistrate judge cited CSZ's October 17,

2008, memorandum in support of its motion for a protective order, where CSZ asserted:

> Three months ago, [Gaymar] brought a Motion [for] Preliminary Injunction that was facially devoid of any evidence of the validity or enforceability of its asserted ['510 patent]. When [CSZ] brought this omission to Gaymar's and this Court's attention just six days later, this Court point blankly asked Gaymar if it was prepared to stand on what it had submitted, and Gaymar said "yes." Nevertheless, this Court graciously gave Gaymar a second chance to reassess whether it had everything in its papers and supplement its pleadings, but Gaymar did nothing.

J.A. 1674; *see also* J.A. 3081 ("At the initial hearing in July, Gaymar asserted, incorrectly, that it could show likelihood of success on the merits merely by establishing infringement. Even after this Court gave Gaymar an opportunity to supplement its motion for a preliminary injunction, Gaymar chose not to address validity or enforceability."); J.A. 4814 ("At the initial hearing in July 2008, CSZ explained Gaymar's deficiency and cited *Nutrition 21*. This Court gave Gaymar an opportunity to supplement its preliminary injunction motion. But Gaymar ignored *Nutrition 21* and did nothing."[8] (citations omitted)). The district court's reliance on this fourth example was also clearly erroneous.

---

[8] As described above, CSZ was relying on *Nutrition 21*'s statement that "at the preliminary injunction stage, because of the extraordinary nature of the relief, the *patentee* carries the burden of showing likelihood of success on the merits with respect to the patent's validity, enforceability, and infringement." 930 F.2d at 869.

Without question, CSZ's arguments (particularly as to the third and fourth examples) could be properly characterized as overstatements. But none of the cited examples amounts to misrepresentation or litigation misconduct. In addressing potential litigation misconduct in analogous contexts, other circuits have concluded that isolated overstatements do not rise to the level of sanctionable litigation misconduct under Federal Rule of Civil Procedure 11. *See, e.g.*, *Kiobel v. Millson*, 592 F.3d 78, 83 (2d Cir. 2010) (a "possible overstatement" does not violate Rule 11); *Navarro-Ayala v. Hernandez-Colon*, 3 F.3d 464, 467 (1st Cir. 1993) ("Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement."); *Fed. Deposit Ins. Corp. v. Tekfen Constr. & Installation Co.*, 847 F.2d 440, 443–45, 444 n.6 (7th Cir. 1988) (vacating Rule 11 sanctions "even if [a] minor argument were off the mark" and "not meritorious" when the defendant's "persistence, perhaps more than the substance of its arguments, led to the sanctions"); *see also, e.g.*, *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1402–03 (9th Cir. 1992) (Under a statute providing grounds for vacating an arbitration award procured by "undue means," 9 U.S.C. § 10(a)(1), "mere sloppy or overzealous lawyering" does not "constitute[] 'undue means.'").

## III

In summary, the examples cited by the district court—whether considered in isolation or in the aggregate—amount to sloppy argument, at worst. While such sloppiness on the part of litigants is unfortunately all too common, it does not amount to misrepresentation or misconduct. In view of the serious consequences of a finding of misconduct, it is important that the district court be particularly careful not to characterize bad lawyering as misconduct. "CSZ's own litigation misconduct," J.A. 36, was cited by the district court for finding

that this was not an exceptional case in light of *Octane*. Because none of the examples cited by the district court constitutes litigation misconduct, a remand is required.

We reverse the district court's denial of attorney's fees, and remand for reconsideration on the totality of the circumstances under *Octane*. On remand, the district court remains free to deny attorney's fees based on the totality of the circumstances, including the strength of Gaymar's litigation position and the sustained finding that Gaymar's litigation position was not objectively baseless.

### AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED

COSTS

Each party to bear its own costs.