# United States Court of Appeals for the Federal Circuit

---

**UNIVERSITY OF UTAH,**
*Plaintiff-Appellee*

**v.**

**MAX-PLANCK-GESELLSCHAFT ZUR FOERDERUNG DER WISSENSCHAFTEN E.V., A CORPORATION ORGANIZED UNDER THE LAWS OF GERMANY, MAX-PLANCK-INNOVATION GMBH, A CORPORATION ORGANIZED UNDER THE LAWS OF GERMANY, WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, A DELAWARE CORPORATION, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, A MASSACHUSETTS CORPORATION, ALNYLAM PHARMACEUTICALS, INC., A DELAWARE CORPORATION, ROBERT L. CARET, PRESIDENT OF THE UNIVERSITY OF MASSACHUSETTS IN HIS OFFICIAL CAPACITY, JAMES R. JULIAN, JR., CHRISTINE M. WILDA, SENIOR VICE PRESIDENT FOR ADMINISTRATION & FINANCE AND UNIVERSITY TREASURER OF THE UNIVERSITY OF MASSACHUSETTS, IN HIS OFFICIAL CAPACITY, JAMES P. MCNAMARA, EXECUTIVE DIRECTOR, OFFICE OF TECHNOLOGY MANAGEMENT OF THE UNIVERSITY OF MASSACHUSETTS, IN HIS OFFICIAL CAPACITY, THEIR PREDECESSORS AND SUCCESSORS IN OFFICE,**
*Defendants-Appellants*

**UNIVERSITY OF MASSACHUSETTS, A**

**MASSACHUSETTS CORPORATION, DAVID J. GRAY,**
*Defendants*

————————————

2016-1336

————————————

Appeal from the United States District Court for the District of Massachusetts in No. 1:11-cv-10484-PBS, Judge Patti B. Saris.

————————————

Decided: March 23, 2017

————————————

MARK CARLSON, Hagens, Berman, Sobol, Shapiro LLP, Seattle, WA, argued for plaintiff-appellee. Also represented by STEVE BERMAN.

MORGAN CHU, Irell & Manella LLP, Los Angeles, CA, argued for defendants-appellants. Also represented by DAVID ISAAC GINDLER, ALAN J. HEINRICH; SANDRA HABERNY, Newport Beach, CA.

————————————

Before O'MALLEY, REYNA, and WALLACH, *Circuit Judges.*

REYNA, *Circuit Judge.*

Defendants-Appellants ("Max Planck") appeal a decision of the United States District Court for the District of Massachusetts, which found that this case was not "exceptional" within the meaning of 35 U.S.C. § 285 and thus denied Max Planck's motion for attorney fees. The district court did not abuse its discretion. We therefore *affirm*.

BACKGROUND

A. Discovery of the Patented Invention

The underlying dispute concerns inventorship of the Tuschl II patents,[1] which relate to the field of RNA interference ("RNAi"). RNAi is a process for "silencing" certain genes from expressing the proteins they encode, which may be useful in treating a variety of diseases, particularly those associated with overactive or mutated genes.

In March 2000, well before the Tuschl II invention was reduced to practice, Dr. Thomas Tuschl and his colleagues published an article describing their various discoveries in the field of RNAi. Less than a month later, Dr. Brenda Bass, of the University of Utah ("UUtah"), published a mini-review in Cell magazine that summarized the state of RNAi research, focusing on Dr. Tuschl's article. In addition to summarizing current research, Dr. Bass' mini-review included several of her own hypotheses about enzymatic processes that may be responsible for the RNAi activity reported in Dr. Tuschl's article. One of those hypotheses involved molecules that have a feature called "3' overhangs," which are certain double-stranded RNA ("dsRNA") molecules with a nucleotide overhang on the 3' ends of dsRNA.

After publishing his article, Dr. Tuschl transitioned to a new line of research that would result in the patented Tuschl II invention. Dr. Tuschl and his colleagues focused on design and testing of candidate molecules to advance their goal of developing synthetic drugs that could trigger RNAi in mammals and be used for therapeutic purposes. It is undisputed that Dr. Tuschl read Dr. Bass' mini-review, recognized her hypothesis that 3' overhangs may

---

[1] The Tuschl II patents include U.S. Patent Nos. 7,056,704; 7,078,196; 8,329,463; 8,362,231; 8,372,968; 8,445,237; 8,765,930; 8,778,902; 8,796,016; and 8,853,384.

be relevant to RNAi, and tested that hypothesis. Those tests were successful; data from cloning and sequencing revealed that species with 3' overhangs were prevalent in active RNAi systems. *See, e.g.*, '704 patent col. 18 l. 14−col. 19 l. 25. Based on these data, the Tuschl II inventors chemically synthesized candidate molecules with and without 3' overhangs and tested for RNAi activity. *See id.* They determined that small synthetic dsRNA with 3' overhangs (dubbed "siRNA") can be more effective at inducing RNAi than dsRNAs without 3' overhangs. *See id.* The Tuschl II inventors demonstrated that their synthetic siRNAs could trigger RNAi for therapeutic purposes in mammals, including humans. *See id.* at col. 21 l. 27−col. 23 l. 67.

Max Planck filed a patent application for the discovery. Dr. Bass' mini-review was cited as prior art during prosecution of all ten of the Tuschl II patents, each of which issued. After the patent applications were filed, the Tuschl II inventors published two articles reporting their findings. Dr. Bass was a journal referee for both articles, and she recommended publication.

## B. Inventorship Challenge

UUtah, on behalf of Dr. Bass, sued Max Planck for correction of ownership, claiming that Dr. Bass should be named as either a sole or joint inventor of the Tuschl II patents. UUtah's claim of sole inventorship turned on allegations that Dr. Bass reduced to practice the concept that molecules with 3' overhangs would be integral to RNAi, focusing primarily on Dr. Bass' mini-review in Cell magazine. Its claim of joint inventorship turned on alleged collaboration between Dr. Bass and the Tuschl II inventors that occurred over several conversations at various academic conferences. J.A. 162−65.

Max Planck moved to dismiss, but the district court denied the motion, finding that UUtah sufficiently alleged the facts necessary to state claims for sole and joint

inventorship.    J.A.  144−46.    The  parties  proceeded  to discovery.

During her deposition, Dr. Bass made several admissions undermining UUtah's allegation that Dr. Bass reduced the Tuschl II invention to practice.  When asked if she ever did "any of the experiments or generate[d] any of the data that is included in the Tuschl II patents," she responded: "Not that I know of."   J.A. 4109.   She explained that: "The subject of the Tuschl II patent is trying to figure out how to put siRNAs on cells and make them work.  My lab does not study that downstream pathway." J.A. 4103.  When asked if her lab "ever studied how to put siRNAs on cells and make them work," she responded: "No." *Id.*  When asked if she ever tested siRNAs as agents for targeting messenger RNAs for research or therapeutic purposes, she responded: "No."  J.A. 4107.  In relation to her role as a journal referee for the articles that revealed the Tuschl II findings, Dr. Bass was asked whether she suggested to anyone that she was not being properly credited as the discoverer of the 3' overhangs, and she responded: "I don't think it would have ever crossed my mind to say that."  J.A. 4112.

Other admissions during her deposition directly contradicted UUtah's allegations that Dr. Bass collaborated with the Tuschl II inventors.  The only supported allegation was that Dr. Bass and Dr. Tuschl met for dinner during a conference and discussed Dr. Tuschl's research in relation to Dr. Bass' hypothesis relating to the 3' overhangs.  J.A. 4104, 4108, 4113−16, 4124.

On the eve of the deadline for dispositive motions in district court, UUtah withdrew its sole inventorship claims, with prejudice.   J.A. 180−84.   Nevertheless, UUtah declined to withdraw its joint inventorship claim. The district court granted Max Planck's motions for summary judgment with respect to the joint inventorship claims.

The district court reasoned that there was no evidence to support a finding of collaboration between Dr. Bass and the Tuschl II inventors. While Dr. Bass' mini-review was admittedly integral to the Tuschl inventors' research, the mini-review was already in the public domain by the time the Tuschl inventors relied on it. Therefore, the district court reasoned, the Tuschl II inventors' reliance on the mini-review could not, on its own, support a finding of collaboration. J.A. 4068−69. The district court recognized the evidence that Dr. Tuschl and Dr. Bass had one discussion over dinner that may have influenced Dr. Tuschl's invention, but declined to find that such discussion at an academic conference could constitute the collaboration needed to establish joint inventorship. J.A. 4073−76.

## C. Motion for Attorney Fees

Max Planck sought eight million dollars in attorney fees pursuant to 35 U.S.C. § 285, arguing that the case was "exceptional" within the meaning of this section for three reasons. First, Max Planck argued that, when viewed in light of Dr. Bass' deposition testimony, UUtah lacked any meaningful basis for filing its correction of inventorship suit. According to Max Planck, UUtah either filed its complaint without properly interviewing Dr. Bass, or filed its complaint knowing that Dr. Bass' testimony would undermine the allegations. Second, Max Planck argued that UUtah's delay in withdrawing its sole inventorship claim until the eve of summary judgment indicates that UUtah knew its claim was meritless. Third, Max Planck argued that UUtah's claimed damages were extortionately high.

The district court denied the motion for fees. The district court disagreed that the case was objectively unreasonable when all reasonable inferences were drawn in UUtah's favor. J.A. 4. The summary judgment record supported UUtah's contentions that Dr. Tuschl incorporated Dr. Bass' hypothesis into his research, that Dr.

Bass' work made a significant contribution to the patented invention, and that the contribution was corroborated by the mini-review published in Cell magazine. J.A. 4.

The district court also explained that, even though UUtah could not ultimately produce the evidence necessary to win, its inventorship claim was predicated on a valid interpretation of *Kimberly-Clark Corp. v. Proctor & Gamble Distributing Co.*, 973 F.2d 911, 917 (Fed. Cir. 1992), which held that one inventor seeing a relevant report and building upon it might be an element of joint behavior supporting collaboration. According to the district court, UUtah was entitled to base its case on seeking an extension of the holding in *Kimberly-Clark*, even though it did not prevail.

The district court agreed that UUtah's sole inventorship argument had little factual support, but credited UUtah for withdrawing that argument prior to summary judgment. The district court also agreed that Utah's damages request was high, but declined to find anything exceptional about its position. Ultimately, the district court concluded that this case was not exceptional because: "Although Utah may have been asking for pie in the sky, that does not differentiate this case from most patent cases." J.A. 5–6.

Max Planck appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

STANDARD OF REVIEW

We apply an abuse of discretion standard to all aspects of a district court's determination regarding fees under § 285. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.,* 134 S. Ct. 1744, 1749 (2014). An abuse of discretion occurs when a district court's decision commits legal error or is based on a clearly erroneous assessment of the evidence. *Id.* at 1748 n.2. "A factual finding is clearly erroneous if, despite some supporting evidence, we are left

with the definite and firm conviction that a mistake has been made." *Insite Vision Inc. v. Sandoz, Inc.*, 783 F.3d 853, 858 (Fed. Cir. 2015).

### DISCUSSION

Max Planck argues that the district court disregarded the Supreme Court's direction in *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014) by failing to consider the substantive weakness of UUtah's litigation position in light of Dr. Bass' deposition testimony.  We disagree.

A district court "in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  An exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1756.  This is "a simple discretionary inquiry; it imposes no specific evidentiary burden, much less such a high one." *Id.* at 1758.

District courts have discretion to make exceptional case determinations on a case-by-case basis, considering the totality of the circumstances. *Id.* at 1756.  Therefore, there is "no precise rule or formula for making these determinations." *Id.*  A "case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* at 1757.  Other non-exclusive factors that may support a finding of exceptional case include frivolousness, motivation, objective unreasonableness of a case's factual or legal components, and the need in particular circumstances to advance considerations of compensation and deterrence. *Id.* at 1756 n. 6.  The district court made no finding that any of these factors applied here.

The district court provided a thorough explanation for why it did not find this case to be exceptional. Max Planck's argument that the district court abused its discretion in failing to follow the *Octane Fitness* framework presumes that there is a precise *Octane Fitness* framework. That is not correct. *Octane Fitness* provides several suggestions that might guide a district court's discretionary decision. For example, *Octane Fitness* suggests that objective unreasonableness may support the finding of an exceptional case. *Id.* While the district court agreed that UUtah's case was weak and based on insufficient evidentiary support, it provided a detailed explanation as to why it disagreed that UUtah's case was objectively unreasonable.

Rather than providing any set formula to dictate the district court's consideration of this issue, *Octane Fitness* defines an exceptional case as one that "stands out from others with respect to the substantive strength of a party's litigating position." *Id.* at 1756 The district court explained why UUtah's position did not stand out from other patent cases, and *Octane Fitness* does not require anything more.

This court has recognized that the Supreme Court's opinions in *Octane Fitness* and *Highmark* stress a district court's discretion to determine whether a case is exceptional on a case-by-case basis, considering the totality of the circumstances:

> "[B]ecause [the district court] lives with the case over a prolonged period of time," *Highmark*, 134 S. Ct. at 1748, it is in a better position to determine whether a case is exceptional and it has discretion to evaluate the facts on a case-by-case basis. *Octane Fitness*, 134 S. Ct. at 1756.

*SFA Sys., LLC v. Newegg Inc.* 793 F.3d 1344, 1351 (Fed. Cir. 2015) (alterations in original).

Max Planck presents evidence from the record suggesting that the district court failed to take certain facts into account and overstated the factual and legal strength of UUtah's position. UUtah presents evidence from the record suggesting the contrary and defending its litigation strategy. We should be wary to wade in such circumstantial waters. The trial judge was in the best position to understand and weigh these issues. She had no obligation to write an opinion that reveals her assessment of every consideration. This court will not second guess her determination. We *affirm*.

### AFFIRMED