# United States Court of Appeals for the Federal Circuit

---

**ROMAG FASTENERS, INC.,**
*Plaintiff-Cross-Appellant*

**v.**

**FOSSIL, INC., FOSSIL STORES I, INC., MACY'S, INC., MACY'S RETAIL HOLDINGS, INC.,**
*Defendants-Appellants*

**DILLARD'S, INC., NORDSTROM, INC., THE BON-TON STORES, INC., THE BON-TON DEPARTMENT STORES, INC., BELK, INC., ZAPPOS.COM, INC., ZAPPOS RETAIL, INC.,**
*Defendants*

---

2016-1115, 2016-1116, 2016-1842

---

Appeals from the United States District Court for the District of Connecticut in Nos. 3:10-cv-01827-JBA, 3:11-cv-00929-CFD, Judge Janet Bond Arterton.

---

Decided: August 9, 2017

---

JONATHAN FREIMAN, Wiggin and Dana LLP, New Haven, CT, argued for plaintiff-cross-appellant. Also represented by TONIA A. SAYOUR, NORMAN H. ZIVIN, Cooper & Dunham, LLP, New York, NY.

LAWRENCE BROCCHINI, Reavis Parent LLP, New York, NY, argued for defendants-appellants. Also represented by JEFFREY E. DUPLER, Gibney Anthony & Flaherty, LLP, New York, NY; LAUREN ALBERT, The Law Offices of Lauren S. Albert, New York, NY; NICHOLAS GEIGER, Cantor Colburn LLP, Hartford, CT.

_____

Before NEWMAN, DYK, and HUGHES, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* DYK.

Opinion concurring-in-part, dissenting-in-part filed by *Circuit Judge* NEWMAN.

DYK, *Circuit Judge.*

Romag Fasteners, Inc. ("Romag") owns U.S. Patent No. 5,722,126 ("'126 patent") on magnetic snap fasteners, which it sells under its registered trademark, ROMAG, U.S. Trademark Reg. No. 2,095,367 ("'367 trademark"). Romag sued Fossil, Inc. and various retailers (together, "Fossil") for, *inter alia*, patent infringement, trademark infringement, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA") in the U.S. District Court for the District of Connecticut ("district court"). The jury returned a verdict for Romag, finding that Fossil had engaged in patent and trademark infringement and in unfair trade practices. A two-day bench trial resolving other issues followed, after which the district court entered judgment on the jury verdict. This court affirmed the judgment of patent and trademark infringement; other aspects of the judgment were not appealed. *See Romag Fasteners, Inc. v. Fossil, Inc.*, Nos. 2014-1896,

2014-1897, 2017 WL 1906904 (Fed. Cir. May 3, 2017) ("*Romag II*").[1]

Romag sought attorney's fees under the Patent Act, 35 U.S.C. § 285, Lanham Act, 15 U.S.C. § 1117(a), and CUTPA. The district court granted fees under the Patent Act and CUTPA, but not under the Lanham Act. Fossil appeals and Romag cross-appeals. We vacate and remand.

## BACKGROUND

Romag owns the '126 patent and the '367 trademark, which are both directed to magnetic snap fasteners. Romag licensed the '126 patent and the '367 trademark to a Chinese manufacturer, which supplied authentic ROMAG magnetic snaps for use in handbags manufactured and distributed by Fossil. In 2010, a batch of Fossil handbags appeared to contain counterfeit ROMAG magnetic snaps, which led Romag to sue Fossil for, *inter alia*, patent and trademark infringement and violation of the CUTPA. The details of Romag's infringement suit are described in our prior opinion, *Romag I*, 817 F.3d at 783–84. The jury found Fossil liable for patent and trademark infringement, as well as for engaging in unfair trade practices under the CUTPA. The patent and trademark

---

[1] The Supreme Court's decision in *SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 137 S. Ct. 954, 967 (2017), held that laches is no longer a defense to patent infringement during the statutory period. In light of this, we vacated and remanded section I of our 2016 opinion, *Romag Fasteners, Inc. v. Fossil, Inc.*, 817 F.3d 782 (Fed. Cir. 2016) ("*Romag I*"), which affirmed the district court's reduction of the jury awarded patent damages by eighteen percent due to the defense of laches. *See Romag II*, 2017 WL 1906904, at *1. We otherwise reinstated our prior opinion in all other respects. *Id*.

infringement verdicts were appealed, and we affirmed the judgment of liability. *Id.* After the trial on the merits, Romag requested attorney's fees under the Patent Act, Lanham Act, and CUTPA.

Under the Patent Act and the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285; 15 U.S.C. § 1117(a). In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), the Supreme Court held that under 35 U.S.C. § 285, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated . . . , considering the totality of the circumstances." 134 S. Ct. at 1756.

Applying the *Octane* standard, the district court found that Romag was entitled to attorney's fees under § 285 of the Patent Act because Fossil did not "withdraw [anticipation and obviousness] defenses with prejudice until after trial," and because Fossil's "patent invalidity defense of indefiniteness bordered on frivolous." J.A. 6. The district court also found that Fossil's non-infringement position (as opposed to its invalidity position) was not "so frivolous or groundless as to justify an award of fees." J.A. 5. Finally, the district court declined to consider Romag's conduct as part of the totality of circumstances because it had already penalized Romag for the timing of Romag's infringement suit and Romag's misconduct during the TRO filing. The district court concluded that it saw "no need to further sanction Plaintiff by denying an award of fees in this case." J.A. 7.

With respect to the Lanham Act, the district court applied the prevailing Second Circuit precedent with respect to 15 U.S.C. § 1117(a) that "allows recovery of a reasonable attorney's fee only on evidence of fraud or bad faith."

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012) (citations, quotation marks, and alterations omitted). Under this standard, the district court found that "in the absence of bad faith, fraud, or willfulness on part of the Defendants, this case is not 'exceptional' within the meaning of the Lanham Act and Plaintiff is not entitled to recover its reasonable attorney's fees." J.A. 9. The district court also awarded Romag attorney's fees under the CUTPA.

Fossil appeals the award of fees under the Patent Act. Romag cross-appeals the denial of fees under the Lanham Act. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

We review a district court's grant of attorney's fees for an abuse of discretion. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1747 (2014) (Patent Act standard); *Milo & Gabby LLC v. Amazon.com, Inc.*, No. 2016-1290, 2017 WL 2258605, at *3 (Fed. Cir. May 23, 2017) (Lanham Act standard). A district court abuses its discretion if it rules based "on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

DISCUSSION

I

We first address Romag's contention that the district court erred in not awarding attorney's fees under the Lanham Act, and that the *Octane* standard applies to both the award of fees under the Patent Act and under the Lanham Act. The district court here concluded that although this "case is 'exceptional' under the more lenient Patent Act standard announced in *Octane Fitness*, it d[id] not find that Defendant acted fraudulently or in bad faith [under the *Louis Vuitton* standard] . . . with respect to trademark infringement . . . to recover its reasonable

attorney's fees under" the Lanham Act. J.A. 9. We conclude that the district court erred and that the *Octane* standard applies to the Lanham Act.

Before *Octane*, the Second Circuit allowed recovery of attorney's fees under 15 U.S.C. § 1117(a) only if there was bad faith or willful infringement on the part of the defendants. *See Louis Vuitton*, 676 F.3d at 111. The question is whether this standard survives after *Octane*. There have been no Second Circuit decisions on this issue since *Octane*.[2] In *Romag I*, we followed the prevailing Second Circuit rule with respect to the award of infringer profits under the Lanham Act, after finding that there were no Supreme Court cases on this issue. *See* 817 F.3d at 785. Here, however, there is intervening relevant Supreme Court authority which, we think, would lead the Second Circuit to follow other circuits which have held that the *Octane* standard applies to the Lanham Act. *See Badalamenti v. Dunham's, Inc.*, 896 F.2d 1359, 1362 (Fed. Cir. 1990) ("[I]f the regional circuit court has not spoken, we must predict how that court would decide the issue . . . .").

Since *Octane* was decided, the Third, Fourth, Fifth, Sixth, and Ninth Circuits have all held that the *Octane* "Court was sending a clear message that it was defining 'exceptional' not just for the fee provision in the Patent Act, but for the fee provision in the Lanham Act as well." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 315 (3d

---

[2]    The Second Circuit in *Penshurst Trading Inc. v. Zodax L.P.*, 652 F. App'x 10 (2d Cir. 2016), held that "[w]e have not yet decided whether [the *Octane*] rule applies in the context of the Lanham Act, but we need not do so here . . . [because] we [would] affirm the district court's denial of attorney's fees" under either *Octane* or *Louis Vuitton*. *Id*. at 12.

Cir. 2014); *see also SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016); *Baker v. DeShong*, 821 F.3d 620, 623–24 (5th Cir. 2016); *Slep-Tone Entm't Corp. v. Karaoke Kandy Store, Inc.*, 782 F.3d 313, 318 (6th Cir. 2015); *Georgia-Pacific Consumer Prods. LP v. von Drehle Corp.*, 781 F.3d 710, 721 (4th Cir. 2015). Indeed, no circuit has specifically considered *Octane* and then declined to apply it to the Lanham Act.

This is unsurprising, as the language of the Patent Act and the Lanham Act for attorney's fees is identical. Both statutes provide that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285; 15 U.S.C. § 1117(a). "[W]hen Congress uses the same language in two statutes having similar purposes, . . . it is appropriate to presume that Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005). In fact, in determining what constitutes an "exceptional" case under the Patent Act, the *Octane* Court looked to *Noxell Corp. v. Firehouse No. 1 Bar–B–Que Restaurant*, 771 F.2d 521, 526 (D.C. Cir. 1985), a Lanham Act case, explaining that "the term 'exceptional' in the Lanham Act's identical fee-shifting provision, 15 U.S.C. § 1117(a), . . . [also] mean[s] 'uncommon' or 'not run-of-the-mill.'" *Octane*, 134 S. Ct. at 1756.

The legislative history of 15 U.S.C. § 1117(a) further supports using the same standard. The Senate Committee Report amending the Lanham Act to allow recovery of attorney's fees—changing the rule enunciated in the Supreme Court decision *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714 (1967)—discussed the strong connection to the Patent Act:

> The federal patent and copyright statutes expressly provide for reasonable attorney fees . . . . Prior to 1967, the courts in trademark infringement . . .

cases had developed an equitable doctrine holding the attorney fees are recoverable by a successful plaintiff, notwithstanding the absence of express statutory authority under the Lanham Act. This doctrine was overruled, however, by the Supreme Court decision in *Fleischmann.* Trademark and unfair competition cases brought under the [Lanham Act], however, present a particularly compelling need for attorney fees, which are denied under the *Fleischmann* doctrine. . . . The proposed amendment would limit attorney fees to 'exceptional cases' and the award of attorney fees would be within the discretion of the court.

S. Rep. No. 93-1400, at 5, *as reprinted in* 1974 U.S.C.C.A.N. 7132, 7135–36.

Thus, we conclude that the Second Circuit would hold that, in light of *Octane*, the Lanham Act should have the same standard for recovering attorney's fees as the Patent Act.

Fossil contends that the district court would not have awarded attorney's fees under the Lanham Act even if it had applied the *Octane* standard. Fossil argues that Romag's only theory for attorney's fees under the Lanham Act was that Fossil's non-infringement defense—that the magnetic snaps at issue here were actually authentic ROMAG snaps—was objectively unreasonable. And since the district court had already found that this defense was not unreasonable with respect to patent infringement, Fossil argues that the district court would make "the same finding under the Lanham Act." Appellant Resp. & Rep. Br. 47. However, we think this issue is best left to the district court in the first instance on remand.

II

We next address whether the district court erred in awarding fees under 35 U.S.C. § 285 to Romag in this case.

Fees may be awarded under 35 U.S.C. § 285 if a party's arguments are objectively unreasonable or if the case was litigated in bad faith. *Octane*, 134 S. Ct. at 1756; *Nova Chem. Corp. (Canada) v. Dow Chems. Co.*, 856 F.3d 1012, 1016–17 (Fed. Cir. 2017). Whether a case is exceptional is viewed under the totality of the circumstances of the case, *Octane*, 134 S. Ct. at 1756, for which we defer to the district court's judgment under abuse of discretion review, *Highmark*, 134 S. Ct. at 1749. However, we are obligated to find an abuse of discretion if a district court "based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter*, 496 U.S. at 405. We conclude that the district court here made several errors.

A

In response to Romag's patent infringement allegation, Fossil initially presented invalidity defenses of anticipation and obviousness. Fossil subsequently decided to not continue to pursue these defenses, as the patent infringement claim amount was relatively small. However, the district court concluded that Fossil declined to abandon these defenses until after the trial, and considered this to be a key factor for awarding fees to Romag. Specifically, the district court held that Fossil's "failure to formally withdraw its [anticipation and obviousness] invalidity defenses until after the close of evidence weigh in favor of an award of fees in this case." J.A. 6–7. The

record establishes that the defenses were withdrawn before trial.[3]

First, during the March 5, 2014, pre-trial conference, the following two exchanges occurred which indicate that the district court was aware that Fossil would not be pursuing invalidity defenses.

Court: [A]re the defendants asserting the affirmative defenses to the patent claim of obviousness and prior art?

Fossil: At this point, your Honor, we are not going to assert those defenses.

Court: Okay.

J.A. 2107.

Fossil: I think we indicated that validity defenses would not be asserted.

Court: And obviousness.

Fossil: Yes.

J.A. 2190–91.

Second, during the March 18, 2014, pre-trial conference, the district court specifically stated that "we clarified in our last hearing that there's no invalidity defense being advanced." J.A. 2255.

Third, the following exchange—which took place the day before the district court ruled on Romag's Rule 50 motion on patent validity—indicates that the court and the parties were aware of the invalidity defenses' withdrawal prior to trial:

---

[3] Contrary to the dissent, we do not conclude that Fossil withdrew its invalidity defenses at the February 12 teleconference. *See* Dissent Op. 4, 6.

Romag: Your Honor, plaintiff moves for judgment as a matter of law under Rule 50 . . . . [T]he defendant has not put on any evidence with respect to the invalidity . . . . And since that was one of their defenses, it seems to us we're entitled to judgment on that. . . .

Court: I thought the defendant at our pretrial conference indicated [it] would not be pursuing the invalidity defense.

Fossil: On trademark and on patent, that's correct, your Honor.

. . . .

Court: . . . If they're not pursuing it, why isn't your motion moot?

Romag: . . . We've gone all the way through this case . . . , and now they decided right before trial that they don't wish to pursue it; and I think we're entitled to a judgment.

Court: Any problem with that, Mr. Cass [Fossil counsel]? I don't think the plaintiff wants to see this again.

Fossil: I think it's a moot issue. We didn't raise it. . . . And then I think at the pretrial stage we indicated we weren't going to . . . .

Court: So if the defendants have clarified that they're not claiming invalidity . . . [,] the charge should properly instruct that the patent is a valid patent, that the parties do not dispute that.

Fossil: I believe we already addressed it . . . , your Honor.

. . . .

Romag: Your Honor, . . . they've never withdrawn these claims. They're in their answer. They've gone up to trial with all this information. *At the last moment they withdraw it.* I don't think that makes it moot. . . .

. . . .

Fossil: Your Honor, I believe somewhere in the record . . . it was already dismissed. We did not go to trial on those claims.

Court: Well, that's sort of what I thought had happened . . . .

J.A. 3865–68 (emphasis added). The following day, the district court clarified that "a portion of [Romag's] motion yesterday was seeking a judgment against the defendant on the invalidity. The defendants represent that they have withdrawn their invalidity defense. In the interest of justice, that defense . . . [is] withdrawn with prejudice." J.A. 2426.

Significantly, Fossil also made no reference to anticipation and obviousness in the preliminary jury instructions, opening statement, witness testimony, proposed verdict form, and final jury instructions.

Thus, Romag's claim that "Fossil did not withdraw its invalidity defenses until after testimony was complete," Appellee Br. 55, is misleading and contradicted by the record. We conclude that there appears to be full awareness between the parties and the district court that the patent invalidity defenses were withdrawn before trial, and that the Rule 50 motion only reaffirmed that common understanding. The district court clearly erred in concluding that Fossil "did not formally withdraw these defenses with prejudice until after [the] trial." J.A. 6. Nor is there any support for the district court's finding

that Fossil "aggressively pursue[d] invalidity counter-claims in an attempt to prolong litigation." J.A. 7.

Finally, we note that the district court made no finding that Fossil's defenses of anticipation and obviousness were objectively unreasonable.

## B

In response to Romag's patent infringement allegation, Fossil also presented the invalidity defense of indefiniteness, arguing that the '126 patent's claim term "rotatable" was indefinite because the patent does not specify the "degree of force necessary to rotate." J.A. 1752. On September 19, 2012, Fossil moved for partial summary judgment on this ground. While the motion was pending, Judge Young, who at the time was presiding over the case,[4] held a *Markman* hearing on April 9, 2013, and construed "rotatable" to mean "capable of being rotated and not rigidly secured." J.A. 1682. This construction appeared to define the force necessary for making the fasteners "rotatable." Indeed, on October 23, 2013, Judge Young granted, *sua sponte*, summary judgment for Romag on the indefiniteness issue, holding that the '126 patent was definite because "rotatable" can be construed to mean "capable of being rotated." J.A. 1753.

During the attorney's fees proceedings, the district court here concluded that "[b]ased on the tenor of Judge Young's [summary judgment] opinion, it [was] clear . . . that Defendants' argument with respect to their patent

---

[4]    Judge Young, from the U.S. District Court for the District of Massachusetts, was sitting by designation in the District of Connecticut. He presided over the early stages of this litigation, but did not preside over the subsequent phases, including the pre-trial conferences, jury trial, and attorney's fees proceedings.

invalidity defense of indefiniteness bordered on frivolous." J.A. 6. Specifically, the district court found that Judge Young had "likened Defendants' evidence in support of its indefiniteness defense to a 'woefully inadequate show-ing.'" *Id*. The district court also concluded that "[i]n light of Judge Young's ruling, . . . [the] Defendants' indefinite-ness defense was entirely meritless and was raised for improper purposes." J.A. 38 (citation and internal quota-tion marks omitted). These findings are erroneous as-sessments of the record.

First, the district court erred in concluding that Judge Young had found Fossil's indefiniteness evidence to be "woefully inadequate." The relevant portion of Judge Young's opinion states:

> [A] party that moves for summary judgment runs the risk that if it makes *a woefully inade-quate showing*, not only might its own motion for summary judgment be denied, the court may grant summary judgment sua sponte against the movant. [Citations to six cases from the Second Circuit and four cases from the First Circuit sup-porting this proposition.]

> This body of precedent constitutes more than adequate notice that the Court may enter sum-mary judgment against the moving party. Such action is proper here. Fossil . . . proffer[s] Freder-ick Kucklick . . . as [its] expert on indefinite-ness. . . . Kucklick opines only that

>> the '126 patent does not provide an ac-ceptable way to quantify the degree of force necessary to consistently define the term 'rotatable' for invalidity and in-fringement purposes. The '126 patent is silent regarding the degree of force neces-

> sary to qualify the attachment legs as 'rotatable' relative to the base washer.

> That's it. *While these statements are true, this Court's construction of "rotatable" renders them immaterial.* What is more, these opinions are nothing more than an *ipse dixit*, and the Federal Circuit has concluded that such general and conclusory testimony "does not suffice as substantial evidence of invalidity" sufficient to carry the defendants' burden of proof. In the absence of sufficient evidence of indefiniteness, Fossil['s] claim must fail and the Court declares that the '126 patent withstands the indefiniteness challenge and that defense is no longer in this case.

J.A. 1753–57 (emphases added) (citations omitted).

Based on this passage, we do not read Judge Young's opinion to be describing Fossil's indefiniteness defense as "woefully inadequate" in the sense that Fossil's theory was objectively unreasonable. The cases upon which Judge Young relied do not suggest otherwise; they deal simply with the procedural requirements for granting summary judgment against the moving party. The inadequacy of the movant's showing is merely a necessary predicate for the grant of summary judgment against the moving party, just as it is a requirement for summary judgment under any circumstances. Rather, Judge Young concluded that while it was "true" that the patent had not quantified the amount of force necessary, "this Court's construction of 'rotatable' renders [Fossil's indefiniteness evidence] immaterial." J.A. 1756. Thus, Judge Young's opinion appears to grant *sua sponte* summary judgment to Romag because Fossil's indefiniteness argument was precluded by the claim construction. We also do not read Judge Young's summary judgment opinion to have a "tenor" that indicates that Fossil's indefiniteness defense "bordered on frivolous."

Second, we note that it was Fossil, not Romag, who moved for summary judgment on the indefiniteness issue. Although not dispositive, we find this to suggest that Romag did not always view Fossil's indefiniteness argument as frivolous.

For these reasons, we conclude that the district court, relying on Judge Young's ruling, erred in holding that Fossil's indefiniteness defense bordered on frivolous.

C

In awarding attorney's fees under the Patent Act, the district court declined to consider Romag's conduct earlier during the litigation that the district court had sanctioned. With respect to the timing of the merits suit, Romag was aware of Fossil's infringement by May of 2010, but did not commence its lawsuit until November of 2010. The district court thus found that "Romag's delay was unreasonable." J.A. 67. Because of this delay, Fossil had "suffered material economic prejudice as a result." J.A. 68. These findings led the district court to the "inescapable conclusion . . . that Plaintiff carefully timed this suit to take advantage of the imminent holiday shopping season to be able to exercise the most leverage over Defendants in an attempt to extract a quick and profitable settlement." J.A. 67. In fact, Romag moved for a TRO and a preliminary injunction on November 23, 2010, three days before Black Friday, using a declaration that the district court found to be "sparse" and which contained "misleading representations." J.A. 78. Based on all of this, the district court sanctioned Romag because it had "acted in bad faith." *Id.*

However, during the proceedings for attorney's fees, the district court concluded that because "the Court ha[d] already ordered that Plaintiff may not recover its fees in connection with the TRO and reduced the jury's reasonable royalty award in light of Plaintiff's laches . . . [and]

[b]ecause these issues were limited in scope . . . , [it saw] no need to further sanction [Romag] by denying an award of fees in this case."[5]  J.A. 7.  The district court erred in reaching this conclusion.

In determining whether a case is exceptional for 35 U.S.C. § 285 fees, a district court must "consider[] the totality of the circumstances."  *Octane*, 134 S. Ct. at 1756. This includes the conduct of the prevailing party that is seeking attorney's fees.  In *Gaymar Industries v. Cincinnati Sub-Zero Products, Inc.*, 790 F.3d 1369 (Fed. Cir. 2015), we clarified that "the conduct of the parties is a relevant factor under *Octane*'s totality-of-the-circumstances inquiry, including the conduct of the movant."  *Id.* at 1373.  For this proposition, *Gaymar* cited *Power Mosfet Technologies, LLC v. Siemens AG*, 378 F.3d 1396 (Fed. Cir. 2004), which affirmed a district court's denial of § 285 fees "because *all* of the parties had conducted themselves without the decorum required when practicing before a federal court . . . and credited each of the parties with some share of the bad behavior."  *Id.* at 1415 (emphasis in original).

The district court therefore erred in declining to consider, in connection with its totality of circumstances analysis, Romag's earlier litigation misconduct.  Romag's misconduct cannot be disregarded on the theory that failure to award fees is equivalent to double-sanctioning Romag.  Indeed, the fact that this misconduct has already

---

[5]   As stated earlier, *SCA Hygiene* held that laches is not a defense to patent infringement during the statutory period.  137 S. Ct. at 967 (2017).  However, no party contends that *SCA Hygiene* makes the district court's sanctions in connection with Romag's TRO misconduct inappropriate.

been sanctioned should be weighed more heavily, rather than be excluded, in the 35 U.S.C. § 285 analysis.

D

One other alleged error by the district court was not in fact an error.  In response to Romag's patent and trademark infringement allegations, Fossil presented a non-infringement defense, where it asserted that the batch of magnetic snaps at issue were in fact genuine ROMAG snaps.  After the trial, Romag moved for judgment as a matter of law with respect to this non-infringement position.  The court denied this motion and allowed the jury to decide the issue.  During the proceedings for attorney's fees, the district court found that "this Court's ruling denying Plaintiff's Rule 50(a) motion precludes a finding that Defendant['s] [non-infringement] argument was so frivolous or groundless as to justify an award of fees."  J.A. 5.

On appeal, Romag contends that the district court erred in concluding that the refusal to grant a Rule 50(a) motion precludes awarding attorney's fees.  We agree with Romag that Rule 50(a) motions are often denied as a matter of course without resolving the merits of the motion.  "Thus, while a district court is permitted to enter judgment as a matter of law when it concludes that the evidence is legally insufficient, it is not required to do so." *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 405 (2006); *see also* 9B Wright & Miller, Federal Practice and Procedure § 2533 (3d ed. 2017 update) ("The trial judge is not required to grant judgment as a matter of law even in a case in which it has the power and it might be appropriate to do so.").  This is especially true here, where the district court denied Romag's Rule 50(a) motion without "dissect[ing] the evidence."  J.A. 2425.  Thus, the district court's denial of Romag's Rule 50(a)

motion does not preclude a finding that Fossil's non-infringement position was frivolous.

However, here, the district court relied on more than its Rule 50(a) ruling to deny attorney's fees on this issue. The district court also found that Fossil's "arguments with respect to non-infringement were not entirely groundless." J.A. 6. Thus, as required by *Octane*, the district court properly evaluated "the substantive strength of a party's litigating position." 134 S. Ct. at 1756. Based on this finding, we see no error in the district court's refusal to consider this issue as an adverse factor in the totality of circumstances, because "[a] party's position on issues of law ultimately need not be correct for them to not 'stand[ ] out,' or be found reasonable." *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) (alteration in original). It is not relevant that Fossil's non-infringement defense may have been weak, if it did not rise to the level of being objectively unreasonable. *See Univ. of Utah v. Max-Planck-Gesellschaft zur Foerderung der Wissenschaften e.V.*, 851 F.3d 1317, 1323 (Fed. Cir. 2017).

E

The district court, under its inherent powers, awarded Romag the portion of its expert witness fees incurred in connection with Fossil's motion for summary judgment on indefiniteness. This was based on the finding that Fossil's indefiniteness argument was without merit according to Judge Young's decision. Because we have set aside that finding, we also set aside the expert witness fee award.

The supplemental fees awarded in connection with the application for attorney's fees are also set aside in light of our conclusions.

CONCLUSION

This case is remanded to the district court to consider the Lanham Act and the Patent Act attorney's fees and the claimed expert fees under the correct standard, free of the errors identified above.  On remand, based on a correct analysis, the district court should evaluate whether an award of fees is appropriate.

**VACATED AND REMANDED**

COSTS

Costs to neither party.

# United States Court of Appeals
# for the Federal Circuit

_____

**ROMAG FASTENERS, INC.,**
*Plaintiff-Cross-Appellant*

**v.**

**FOSSIL, INC., FOSSIL STORES I, INC., MACY'S, INC., MACY'S RETAIL HOLDINGS, INC.,**
*Defendants-Appellants*

**DILLARD'S, INC., NORDSTROM, INC., THE BON-TON STORES, INC., THE BON-TON DEPARTMENT STORES, INC., BELK, INC., ZAPPOS.COM, INC., ZAPPOS RETAIL, INC.,**
*Defendants*

_____

2016-1115, 2016-1116, 2016-1842

_____

Appeals from the United States District Court for the District of Connecticut in Nos. 3:10-cv-01827-JBA, 3:11-cv-00929-CFD, Judge Janet Bond Arterton.

_____

NEWMAN, *Circuit Judge*, concurring-in-part, dissenting-in-part.

The sole issue is the award of attorney fees, on application of the Supreme Court's adjusted standard as set forth in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 134 S. Ct. 1749 (2014) and *Highmark Inc. v. Allcare Health Management System*, 134 S. Ct. 1744 (2014).

I

In the initial ruling on Romag's motion for attorney fees with respect to the issue of trademark infringement, the district court applied the Second Circuit's pre-*Octane Fitness* attorney fee standard requiring "evidence of fraud or bad faith." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012). I agree with my colleagues that the general adoption by the regional circuits, in trademark cases, of the patent-based attorney fee standard set forth in *Octane Fitness,* renders it more likely than not that the Second Circuit would also take this path in trademark cases.

Thus I share the view that remand is appropriate for determination by the district court of whether, on the *Octane Fitness* standard, attorney fees are warranted for the trademark infringement here found.

II

I do not, however, share my colleagues' view that the district court abused its discretion in awarding attorney fees with respect to the patent issues.

The district court observed that Fossil pressed its invalidity theories, including anticipation and obviousness arguments, until the eve of trial, at which time Fossil seemed to offer assurance that these aspects would not be pursued. Nonetheless, Fossil did not withdraw either its invalidity defenses or its invalidity counterclaims, maintained its patent expert on its witness list, and kept "prior art" on its trial exhibit list. I take note of the representations quoted by my colleagues, but such representations at the eve of trial and after trial had begun were reasonably viewed by the district court as too tardy and too equivocal to negate the assessment of attorney fees.

The district court recognized that withdrawal of the invalidity counts was not achieved until after trial had begun, when the district court effectively granted Romag's

Rule 50 motion. Tr. Charge Conference, April 1, 2014, 45:3-11, ECF No. 439. As the district court observed, Romag and its witnesses had been required to prepare and to remain prepared on the patent invalidity issues throughout extensive pre-trial proceedings and until "the eve of trial." Dist. Ct. Op. 6.

I do not discern where, or how, the district court abused its discretion, for the district court reasonably observed that this case "stood out from the others," in the words of *Octane Fitness*, concluding that Fossil "aggressively pursue[d] invalidity counterclaims in an attempt to prolong litigation and exponentially increase the cost and risk of pursuing a lawsuit." Dist. Ct. Op. 7.

My colleagues nonetheless second-guess the district court's observations and depart from the required deferential review of discretionary rulings. I respectfully dissent from Part II of the court's opinion.

## A

The standard for award of attorney fees is whether the case "stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness,* 134 S. Ct. at 1756. We review the district court's action for abuse of discretion. *Highmark*, 134 S. Ct. at 1747. My colleagues acknowledge this standard and its highly deferential review, yet substitute their interpretation of the events that the trial judge experienced first-hand.

For instance, my colleagues state that "[t]he record establishes that the [invalidity] defenses were withdrawn before trial." Maj. Op. 9-10. That is incorrect. The record establishes that the defenses were not withdrawn until after trial had begun, when the district court withdrew them on Romag's Rule 50 motion. Tr. Charge Conference, April 1, 2014, 45:3-11, ECF No. 439. Thus Romag was

required to prepare, and remain prepared, for these invalidity issues, as the district court observed. Dist. Ct. Op. 6 ("Romag's decision to continue to present evidence to counter [Fossil's] invalidity defenses until the claims were formally withdrawn with prejudice was entirely foreseeable.").

The district court did not abuse its discretion in imposing attorney fee recovery for this aspect of the litigation, for Fossil persisted in retaining the invalidity defenses and counterclaims for over three years, and repeatedly equivocated as the trial date approached. On the uncertainty and obfuscation that existed, the trial court did not abuse its discretion in determining that the case was litigated in a manner that "stands out from others." *Octane Fitness,* 134 S. Ct. at 1756.

B

In response to Romag's complaint, which was filed in December 2010, Fossil pled patent invalidity as an affirmative defense and counterclaimed for a declaratory judgment of patent invalidity. Defs.' Answer, Affirmative Defenses, & Countercls., Dec. 15, 2010, 6, 8, ECF No. 31. These responses led to extensive preparatory activity by the parties, to attack and defend what the district court referred to as "Romag's principal business asset." Dist. Ct. Op. 6. Fossil's invalidity challenges included an expert report concerning invalidity, expert witness deposition, discovery, the listing of purportedly invalidating prior art, a motion for summary judgment, and other pretrial proceedings. The jury trial was scheduled to start on March 24, 2014.

As the trial date neared, at a court status teleconference on February 12, 2014 Romag pointed out that Fossil's proposed jury instructions and trial brief did not mention patent invalidity. Romag requested that Fossil declare its intentions regarding its invalidity defenses and counterclaims:

> **Romag's counsel**: There is nothing in the document . . . about patents. When we asked [Fossil's counsel] in a phone conversation last week in a meet and confer whether they were pursuing any patent defense at all, he refused to answer saying he'll determine it at trial . . . . [I]t's very difficult to go to trial on a patent case as it is . . . and it's even more difficult when we don't even know whether the defendant is putting in a defense. Either they're putting in one or they're not.

Tr. Teleconference, Feb. 12, 2014, 39:7-40:2, ECF No. 324. Romag elaborated on its concerns:

> **Romag's counsel**:  If they are not putting it in, I think we're entitled to a judgment on the pleadings, particularly on their counterclaim, and . . . if they are putting it in, we need to know. We need the experts. We need to be prepared for their response at trial. This is not a guessing game. I think at this point, this goes to trial, we're entitled to know whether those patent issues are still before the Court or whether they are withdrawn.

*Id*. at 40:2-11.  Fossil's counsel responded by offering to present Romag with a stipulation later in the week, and the "hope" that some of these issues could be eliminated.

> **Fossil's counsel**: So I think that I can get something to them by the end of this week and hopefully we can maybe even eliminate some of those issues in some sort of stipulation.

*Id*. at 41:14-17.  Romag continued to press for specificity:

> **Romag's counsel:** . . . but as to the merits of the patent claim, either [Fossil's] pursuing it or [Fossil's] not pursuing it, and I don't see why we're not entitled to know at this late stage whether [Fossil's] pursuing it or not or whether we have to file a motion.

*Id*. at 42:10-15.

The judge asked if Fossil "intend[ed] to include in [the] stipulation whether [it was] pursuing or abandoning either of [its] invalidity or noninfringement claims." *Id*. at 42:16-19.  Fossil then requested more time, but made no commitment:

> **Fossil's counsel**: I would like until next Friday, but I think we might be able to stipulate something along the lines that, you know, if they're established to be counterfeits, then, you know, we're not contesting infringement.  If they're—you know, on validity, I don't know, I have got to re-circle back with all of the defendants, but in my view it's a $28,000 claim.  So I'm sort of in agreement it's a waste of everybody's time to litigate it at this point.

*Id*. at 43:11-20. Fossil's counsel did not answer either the trial judge's or Romag's questions regarding the invalidity claims.  This discussion does not support the majority's conclusion that the trial judge and Romag knew that the invalidity counts were withdrawn.[1]  It was already the "eve of trial," after more than three years of pre-trial proceedings, yet Fossil equivocated.

The panel majority also focuses on the exchange at a further pre-trial conference, held March 5, 2014.  On being pressed by the trial judge, Fossil stated that "at this point" it would not assert the invalidity defenses:

---

[1]    This portion of the record does not show that Fossil withdrew its invalidity defenses at this teleconference.  Maj. Op. 10 n.3.  However, Fossil stated that it would determine its intentions regarding invalidity "at trial"—it did not withdraw the invalidity defenses before trial, leading to withdrawal by the district court on Romag's motion during trial.

> **Court**: . . . are the defendants asserting the af-
> firmative defenses to the patent claim of obvious-
> ness and prior art?
>
> **Fossil's counsel**: At this point, your Honor, we
> are not going to assert those defenses.
>
> **Court**: Okay.

Tr. Pretrial Conference, Mar. 5, 2014, 7:6-12, ECF No. 359. Does "at this point" mean that Fossil could not change its mind at a later point? One cannot fault Romag for uncertainty, given that Fossil had previously told Romag that Fossil would "determine it at trial." And despite this exchange, Fossil still did not withdraw the invalidity defenses or counterclaims. The district court recognized the uncertainty, stating "Romag's decision to continue to present evidence to counter Defendants' invalidity defenses until the claims were formally withdrawn with prejudice was entirely foreseeable." Dist. Ct. Op. 6.

The panel majority focuses on the trial judge's question about the exhibit list at the March 18, 2014 conference, with trial set to start on March 24:

> **Court**: And then there's several exhibits about
> prior art that -- since we clarified in our last hear-
> ing that there's no invalidity defense being ad-
> vanced, are they artifacts that aren't really going
> to be offered? Let me see if I can find my notes on
> that.

Tr. Pretrial Conference, Mar. 18, 2014, 155:6-11, ECF No. 370. The exhibits about prior art related to Fossil's invalidity defenses, yet they remained on the Exhibit list a week before the scheduled trial, and the purported withdrawal still had not been implemented.

The panel majority also states that a colloquy concerning a motion filed by Romag on March 31, 2014,

"indicates that the court and the parties were aware of the invalidity defenses' withdrawal prior to trial." Maj. Op. 10. However, the trial had begun a week earlier. The next day, at the April 1, 2014 charge conference, the district court effectively granted the motion and withdrew Fossil's invalidity defenses with prejudice:

> **Court**: . . . a portion of [Romag's] motion yesterday was seeking a judgment against the defendant on the invalidity. The defendants represent that they have withdrawn their invalidity defense. In the interest of justice, that defense may be withdrawn, but it is withdrawn with prejudice, and therefore, no judgment will enter. But the effect is the same for [Romag].

Tr. Charge Conference, April 1, 2014, 45:3-11, ECF No. 439.

The portions of the record cited by the panel majority do not impugn the district court's discretion regarding events the trial judge observed first hand. The pleadings, the years of trial preparation, and the vacillation until after trial had begun, all support the district court's discretion in finding that this case "stands out from others" in the manner of its litigation. Romag was surely required to prepare for trial on the validity issues, including discovery, depositions, experts, etc.

C

In finding an abuse of discretion by the trial judge, the majority has given inadequate countenance to the Court's guidance in *Octane Fitness*, that

> an "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine

> whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Octane Fitness*, 134 S. Ct. at 1756. The majority also ignores the Court's guidance in *Highmark,* that

> as a matter of the sound administration of justice, the district court is better positioned to decide whether a case is exceptional, because it lives with the case over a prolonged period of time . . . . [T]he question is multifarious and novel, not susceptible to useful generalization of the sort that de novo review provides, and likely to profit from the experience that an abuse-of-discretion rule will permit to develop.

*Highmark*, 134 S. Ct. at 1748-49 (internal quotations and citations omitted).

The district court did not abuse its discretion in the assessment of attorney fees. "Abuse of discretion is a highly deferential standard of appellate review." *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1306 (Fed. Cir. 2017). In matters of judicial discretion, especially with respect to litigation procedures, the appellate court should exercise restraint in substituting its view for that of the judge who was on the spot. *See generally Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1468 (Fed. Cir. 1997) ("Questions of misconduct often involve the tone and tenor of advocacy, rather than the literal words of the advocate. In such instances, a cold printed record cannot fully convey the aspects of conduct that a trial court might find egregious. Thus, this court is careful to avoid substituting its assessment of facts for those of the judge who experienced them firsthand."). This court has long recognized that "[t]he trial judge is better able to assess the conduct of parties appearing before it than is this court." *Id*.

No abuse of discretion has been shown, no "definite and firm conviction that a mistake has been made." *Univ. of Utah v. Max-Planck-Gesellschaft Zur Foerderung der Wissenschaften e.V.*, 851 F.3d 1317, 1322 (Fed. Cir. 2017) (citing *Insite Vision, Inc. v. Sandoz, Inc.*, 783 F.3d 853, 858 (Fed. Cir. 2015)). It is not disputed that Romag incurred significant expense and burden in preparing to defend patent validity, much of which could have been spared had Fossil been more straightforward concerning its litigation intentions. The district court, having observed these tactics, did not abuse its discretion in its limited award of attorney fees. From my colleagues' contrary ruling, I respectfully dissent.